IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

**DARRELL BUCK and**                                              **PLAINTIFFS**
**SHAMUS WATSON**


**vs.**                    **Case No. 2:22-cv-2153-PKH**


**WESTWIND AND ASSOCIATES, INC.**                          **DEFENDANT**
**and MARK ECCLESTON**


## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.    INTRODUCTION

In this action Plaintiffs Darrell Buck and Shamus Watson (collectively "Plaintiffs")

claim that Defendants Westwind and Associates, Inc., ("Westwind") and Mark Eccleston

(collectively "Defendants") violated the Fair Labor Standards Act (the "FLSA") and the Arkansas

Minimum Wage Act (the "AMWA") by misclassifying Plaintiffs as independent contractors. The

Plaintiffs seek to recover alleged unpaid wages in this action. Plaintiff Darrell Buck also has

brought a claim for retaliation pursuant to the FLSA, wherein he has alleged Westwind took

retaliatory action against him for asserting rights under the FLSA.

Both Plaintiffs signed agreements with Westwind that classified each of them as

independent contractors. Plaintiff Darrell Buck began providing contract labor services as a

plastic welder to Westwind in January 2021. Plaintiff Shamus Watson began providing contract

labor services as a plastic welder to Westwind in November 2020. Each Plaintiff submitted to

Westwind an executed Form W-9 at the outset of the contract labor period. In their W-9's, the

Plaintiffs stated their federal tax classification was individual/sole proprietor under penalty of perjury.

The Plaintiffs cannot establish they are employees under the FLSA and AMWA. Each plaintiff freely and voluntarily contracted with Westwind to provide their services as independent contractors. This Court should give effect to the valid contract the plaintiffs entered into with Westwind in regard to the plaintiffs' services. Westwind requests this Court to adopt the "rebuttable presumption" FLSA standard discussed below. *See Infra* Part III.

The economic realities of the Plaintiffs providing labor to Westwind is also indicative of an independent contractor relationship, not subject to the protections of the FLSA and AMWA. It is the Plaintiffs burden to plead and establish that they are "employees" for the purposes of the FLSA and AMWA and it is their burden to establish damages. Even if the Plaintiffs are considered employees, neither Plaintiff could testify beyond mere speculation and conjecture as to any damages each has suffered. Additionally, neither plaintiff has presented any evidence of the number of hours worked or number of damages they are claiming. Based on the pleadings, discovery, declarations, discovery, independent contractor agreements and deposition testimony it becomes clear that Plaintiffs are correctly classified as independent contractors, exempt from the FLSA and the AMWA. For these reasons, and for the reasons stated herein, Defendants' Motion for Summary Judgment should be granted.

## II.    RELEVANT FACTUAL BACKGROUND

Westwind is a company formed in 1983 which specializes in plastic bin welding and repairs.  Clients of the company range from some of the world's largest food processors to local individuals. Westwind operates in a 6,750 square foot facility where specialized techniques are used to perform plastic welds and repairs. *See* **Ex. 1** (N. Eccleston Decl.) Hours

of operation for Westwind are from 6:00 A.M. to 2:30 P.M. Monday-Friday. Defendant Mark Eccleston and Noreen Eccleston are owners of Westwind and have been since its inception. Defendant Mark Eccleston is not involved in the day-to-day operations of Westwind and has not been involved for approximately the last three (3) years. *See* **Ex. 2.** (M. Eccleston Decl.) Noreen Eccleston handles the day-to-day operation of Westwind. *See* **Ex. 2** (M. Eccleston Decl.)

Plaintiff Shamus Watson signed an independent contractor agreement in November 2020 and Plaintiff Darrell Buck signed an independent contractor agreement in January 2021. *See* **Ex. 3 & Ex. 4**. After signing these agreements, Plaintiffs began providing plastic welding contract labor to Westwind. Until July 2022, it was common practice for contract laborers to sign independent contractor agreements with Westwind. *See* **Ex. 1** (N. Eccleston Decl.) Each Plaintiff in this instant litigation acknowledged signing independent contractor agreements with Westwind. *See* **Ex. 5** (Watson Dep. 32: 20-33:9); **Ex. 6** (Buck Dep. 30: 4-6). By executing the agreements, each plaintiff "hereby accept[ed] such engagement" as an independent contractor. *See* **Exs. 3 & 4**.

Nothing contained in the independent contractor agreements prevented the Plaintiffs from working elsewhere. Westwind did not prevent independent contractors who provide contract labor to Westwind from working for other entities or individuals. *See* **Ex.1** (N. Eccleston Decl.) Further, in the agreements, each plaintiff acknowledged and agreed that:

1. The independent contractor agreements "shall not render the contractor an employee, partner, agent of, or joint venturer with the Company for any purpose. The Contractor is and will remain an independent contractor in [his or her] relationship to the Company.

2. The Company shall not be responsible for withholding taxes with respect to the Contractor's compensation hereunder.

3

3. The Contractor shall have no claim against the Company hereunder or otherwise for vacation pay, sick leave, retirement benefits, social security, worker's compensation, health or disability benefits, unemployment insurance benefits, or employee benefits of any kind.

*See* **Ex. 3 & 4.** At no point while the Plaintiffs provided contract labor did any of the aforementioned terms change. In addition to signing independent contractor agreements, each plaintiff also filled out W-9's and were issued 1099's from Westwind for each tax year the plaintiffs provided their services to Westwind. *See* **Ex. 1** (N. Eccleston Decl.)

Plaintiffs were paid weekly with payday being Friday. *See* **Ex. 1** (N. Eccleston Decl.) To receive payment, plaintiffs were responsible for submitting invoices to Westwind and recording the number of bins welded and/or washed. *See* **Ex. 1** (N. Eccleston Decl.) After receiving the invoices, Westwind would confirm and verify the number of bins repaired and/or washed and would then issue payment. **Ex. 1** (N. Eccleston Decl.)

At Westwind's shop, there are calendars where it is recorded who is absent, or tardy, or who leaves early on any particular day. **Ex. 1** (N. Eccleston Decl.) As previously stated, the workday at Westwind runs from 6:00 A.M. to 2:30 P.M. Workers are provided with a thirty-minute lunch break during the workday. **Ex. 1** (N. Eccleston Decl.) Thus, Westwind operates on a forty-hour work week schedule. At no point during either Plaintiffs time spent providing contract labor to Westwind did they work more than forty hours per week. **Ex. 1** (N. Eccleston Decl.).

During the time period relevant to this litigation, workers would trickle into the facility between 5:45 A.M. and 6:00 A.M. To get to Westwind's shop, workers must pass through a gate and then travel roughly a half a mile down a dirt road. *See* **Ex. 7** (D. Thatcher Decl.). This gate is opened between 5:15 A.M. and 5:30 A.M. each morning and laborer Donny Thatcher has opened the gate for approximately the last six years. *See* **Ex. 7** (D. Thatcher Decl.) After opening the gate,

4

Donny would drive to the shop where Noreen or Mark Eccleston would open the doors to the shop around 5:45 A.M. each morning. *See* **Ex. 7** (D. Thatcher Decl). Donnie never recalled Shamus Watson or Darrell Buck ever waiting for Donnie to open the gate, nor does Donny remember Darrell Buck or Shamus Watson ever waiting for Noreen or Mark Eccleston to open the shop doors. *See* **Ex. 7** (D. Thatcher Decl.).

After arriving at the facility workers will change into work clothes. *See* **Ex. 8** (A. Dulaney Decl.). These work clothes consist of blue jeans and a button-down shirt and do not consist of any special clothing or gear. *See* **Ex. 8** (A. Dulaney Decl.). It usually takes two to three minutes for workers to change and sanitize. *See* **Ex. 9** (C. Sanders Decl.). The uniforms are provided as a complimentary service to Westwind workers as some of Westwind's workers live in rural areas and do not have access to electricity or running water. *See* **Ex. 8** (A. Dulaney Decl). The cost of these uniforms and the cleaning fees are not deducted out of the workers' compensation. *See* **Ex. 8** (A. Dulaney Decl).

In August 2022, Westwind decided to part ways with plaintiff Darrell Buck. *See* **Ex. 1** (N. Eccleston Decl.) This occurred after Buck missed an entire week of work and after he was displaying volatility and animosity in the workplace. In addition to missing this time, Buck displayed chronic tardiness and absenteeism and displayed volatile workplace behavior while he provided contract services to Westwind. *See* **Ex. 1** (N. Eccleston Decl.). Buck was also arrested and pled guilty to a felony drug charge while he was providing contract labor to Westwind. [1] Plaintiff Shamus Watson ceased to provide contract labor to Westwind in July 2022, stating he left "just for a better opportunity." *See* **Ex. 5** (Watson Dep. 69: 16-20).

---

[1] *See* Sentencing Order *dated* May 16, 2022 in *State v. Darrell Buck,* 42PCR-22-18 Logan County Circuit Court, Paris District.

Westwind maintains a calendar in its facility where it would be noted when an independent contractor was absent, tardy, or left early. **Ex. 1** (N. Eccleston Decl.) One of Westwinds' contract workers, Chester Sanders implemented this calendar after he observed other contractors taking advantage of WestWind by showing up late, leaving early or not showing up to work at all. *See* **Ex. 9** (C. Sanders Decl.) Sanders would record on the calendar who showed up late or left early and would note that on whatever date it was. *See* **Ex. 9.** (C. Sanders Decl.) Further, Sanders had a front row view of the entryway to Westwind as his workspace is on the front row. Any worker who showed up late, or left early had to go by Chester Sanders workspace. *See* **Ex. 9** (C. Sanders Decl.).

During his time providing contract labor to Westwind, Darrell Buck was absent approximately twenty-eight (28) times and was tardy or left early approximately eighty-three (83) times. **Ex. 1** (N. Eccleston Decl.) Shamus Watson was absent approximately thirty-two (32) times and was tardy or left early approximately one hundred and eleven (111) times. **Ex. 1** (N. Eccleston Decl.) Watson's attendance was so sporadic that several workers began to call him "Monday's" because he was frequently late or was all together absent on Mondays. *See* **Ex. 10** (T. Thomas Decl. 4); **Ex. 7** ( D. Thatcher Decl.) In addition, both Shamus Watson and Darrell Buck would frequently not arrive until right at 6:00 A.M. or later on any given workday. *See* **Ex. 9** (C. Sanders Decl.). Other workers who were at Westwind when Darrell Buck and Shamus Watson worked there do not recall plaintiffs arriving at 5:30 A.M. *See* **Ex. 7** (D. Thatcher Decl.)

## III.   ANALYSIS

### A.  Legal Standard for Summary Judgment

If the Plaintiffs cannot establish the existence of an essential element in any cause of action for which the Plaintiffs bear the burden of proof at trial, summary judgment is proper. *See Celotex*

6

*Corp. v. Catreet,* 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(a) (summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"). Put another way, in dealing with summary judgment motions, the inquiry is the threshold inquiry of determining whether there is a need for trial- - whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).

Upon review of summary judgment motions, "the non-moving parties have the obligation to come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249; *see also Barber v. C1 Truck Driver Training LLC,* 656 F.3e 782, 791 (8th Cir. 2011) (mere existence of a scintilla of evidence is not sufficient).

To survive a motion for summary judgment, a [plaintiff] must present more than unsupported conclusions and speculative statements, which do not raise a genuine issue of fact. *Hamilton v. Bangs, McCullen, Butler, Foye & Simmons, L.L.P.,* 687 F.3d 1045, 1050 (8th Cir. 2012). The non-moving party must substantiate allegations by "sufficient probative evidence that would permit a finding in his or her favor on more than mere speculation, conjecture or fantasy." *Holaway v. Stratasys, Inc.,* 771 F.3d 1057, 1059-60 (8th Cir. 2014). Broad, conclusory, and self-serving statements are not sufficient to avoid summary judgment. *See Helfter v. United Parcel Service, Inc.,* 115 F.3d 613, 616 (8th Cir. 1997) (explaining general, conclusory statements in affidavits and deposition testimony as being inadequate to avoid summary judgment). Evidence,

not contentions, avoids summary judgment. *Al-Zubaidy v. Tek Industries, Inc.,* 406 F.3d 1030, 1036 (8th Cir. 2005).

>   **B.  This Court should grant Defendants' Motion because Plaintiffs cannot establish they were employees under the Fair Labor Standards Act and the Arkansas Minimum Wage Act**

In order to pursue a claim under the FLSA or AMWA, the Plaintiffs has the burden of proof on the threshold issue of whether an employer-employee relationship exists. *See Reich v. ConAgra, Inc.,* 987 F.2d 1357, 1360 (8th Cir. 1993). "FLSA wage and hour requirements do not apply to true independent contractors. *Karlson v. Action Process Serv. & Private Investigation, LLC,* 860 F.3d 1089, 1092 (8th Cir. 2017); 29 U.S.C. §203(e)(1); Ark. Code Ann. §11-4-203(E) and (6). The classification of "whether an individual is an employee or independent contractor is a question of law." *Fesler v. Whelen Eng'g Co.,* 688 F.3d 439, 442 (8th Cir. 2012); *Roslov v. DirectTV Inc.,* 218 F. Supp.3d 965, 972 (E.D. Ark. 2016) (determination of whether Defendant was plaintiff's employer is a question of law).

To aid in the legal determination of a worker's status courts "typically employ the economic realities test to determine whether an individual is an employee under the FLSA." *Miller v. Centerfold Entm't Club, Inc.,* 2017 U.S. Dist. LEXIS 125945 *at 10 (W.D. Ark. Aug 9, 2017). Under the economic realities test, court typically analyze the relationship under six factors. The six factors of the economic realities test are: (1) the degree of control exercised by the alleged employer; (2) the worker's investment in the business; (3) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; (4) the skill and initiative in performing the job; (5) the permanency of the relationship; and (6) the extent to which the work is an integral part of the alleged employer's business. *Harris v. Express Courier Int'l., Inc.,* 2017

U.S. Dist. LEXIS 192363 *at 17 (W.D. Ark. Nov. 21, 2017). However, language in an independent contractor agreement may be considered by courts as one "circumstances of the whole activity." *Lester v. Wildwood Financial Group,* 204 F.3d 1346, 2000 WL 93434 (8th Cir. 2000) (unpublished). Additionally, an arrangement where an individual is not provided employee benefits, not covered by worker's compensation, has no taxes withheld from compensation and has income reported on a Form 1099 is "especially indicative of an independent contractor relationship." *Karlson,* 860 F.3d at 1095. (emphasis added). Under the economic realities test, no single factor is dispositive, and the totality of the circumstances should be considered. *Krupicki v. Eagle One, Inc.,* 2014 U.S. Dist. LEXIS 46038 *at 10 (E.D. Ark. Apr. 3, 2014).

While courts in the Eighth Circuit usually employ the economic realities test, the Eighth Circuit has "[never] held that [the multi-factor economic realities test] is the governing standard." *Karlson*, 860 F.3d at 1092; *see also Walsh v. Alpha & Omega USA, Inc.,* 39 F.4th. 1078, 1082 (8th Cir. 2022) ("We assume without deciding that the economic realities test is appropriate in determining whether a worker is an employee or independent contractor under the FLSA"). In the Eighth Circuit, courts have begun to look outside the traditional economic realities, instead looking at certain tax and benefits related contractual provisions of the parties' agreements that are "especially indicative of an independent contractor relationship." *Karlson,* 860 F.3d at 1095. In an Eastern District of Arkansas case, the Court stated: "the Eighth Circuit has simultaneously acknowledged the important weight to be given to contractual terms that comprehensively set out an independent contractor relationship–especially where the subsequent tax-and-benefits related behavior of the parties conform to those terms. "*O'Dell v. Qualscript, LLC,* 2023 U.S. Dist. LEXIS 53084 *at 28 (E.D. Ark. Mar. 28, 2023).

In *O'Dell*, the District Court adopted the "use of a rebuttable presumption" in analyzing employee/independent contractor status for purposes of FLSA and AMWA applicability. *Id.*, at *29. Under this rebuttable presumption,

> "where (1) the contract labels the relationship between the individual and company as an independent contractor relationship, (2) the remaining contractual provisions such as tax-and-benefits-related provisions, set out an independent contractor relationship, and (3) the tax-and-benefits-related behavior of the parties after entering into the contract is consistent with the contract language, the individual will be presumed an independent contractor for purposes of the FLSA."

*Id.* The [rebuttable] presumption can be overcome if the economic realities test clearly and convincingly establishes an employer-employee relationship. *Id.,* at *30.

The use of a rebuttable presumption is appropriate in determining how to classify the plaintiffs in this action. Further, the implementation of a rebuttable presumption in favor of contractual descriptions of the parties' relationship "honors and gives credence to the intention of the parties." *Id.* It is core tenet of contract law that "courts strenuously endeavor to give effect to the parties intentions." *Id.; see also Rent-A-Center, West, Inc., v. Jackson,* 562 U.S. 63, 67-68 (2010) (stating that a contract should be enforced according to its terms). As correctly stated in *O'Dell,* "there is no good reason to treat FLSA cases as occupying some parallel universe where we don't care about the parties' bargain and meeting of the minds." *O'Dell,* at *30 (emphasis added). Defendants respectfully request this court to adopt the "rebuttable presumption" standard announced in *O'Dell.* Adoption of this rebuttable presumption standard does not abrogate the rights afforded by the FLSA, rather it gives credence to the parties' ability to contract and bargain. Under this rebuttable presumption standard, the "presumption can be overcome if the economic realities test clearly and convincingly establishes and employer-employee relationship." *Id.*

### 1. The Independent Contractor Agreements executed by Plaintiffs create a rebuttable presumption that the plaintiffs are independent contractors

It is undisputed the Plaintiffs each executed independent contractor agreements prior to providing services to Westwind. In their depositions, each Plaintiff acknowledged they signed independent contractor agreements. *See* **Ex. 5** (Watson Dep. 32: 20-33:9); **Ex. 6** (Buck Dep. 30: 4-6). Each Plaintiff "accepted such engagement" as independent contractor. *See* **Ex. 3 & 4**. The independent contractor agreements explicitly state: "this agreement shall not render the Contractor an employee, partner, agent of, or joint venturer with the company for any purpose." *See* **Ex. 3 & 4**. The agreements go further, stating "the company shall not be responsible for withholding taxes with respect to the contractor's compensation hereunder." *See* **Ex. 3 & 4**. Additionally, the Plaintiffs did not receive any employee benefits or fringe benefits of any kind under the independent contractor agreements." **Ex. 3 & 4**.

Upon review of the independent contractor agreements, it is unquestionable that the parties desired to form and did indeed, form an independent contractor relationship. Thus, the parties created a rebuttable presumption that the plaintiffs are independent contractors. The tax-and-benefits related behavior of the parties was consistent with the independent contractor agreements as well. Taxes were not withheld from Plaintiffs pay checks and each plaintiff signed W-9's in which each plaintiff indicated they were "individuals/sole proprietors" and were not subject to backup withholding." *See* **Ex. 1-A.** Further, Westwind issued Form 1099's to each Plaintiff for each year they provided contract labor to Westwind. *See* **Ex. 1** (N. Eccleston Decl.) Finally, plaintiff Darrell Buck claimed business expenses and deductions on his tax returns indicative of, and consistent with his status as an independent contractor. All of these facts show that Plaintiffs contracted and bargained with Westwind to be classified as independent contractors.

Based on the record, deposition testimony and documents produced in this case, the Plaintiffs cannot establish they were employees of the Defendants. The Plaintiffs cannot overcome a rebuttable presumption they are independent contractors and even if they could overcome such presumption, under the totality of the circumstances, the Plaintiffs cannot show by clear and convincing evidence under the economic realities test that they are employees of the Defendants. Based on the foregoing, the Defendants Motion for Summary Judgment should be granted.

**2. Plaintiffs exercised substantial control over the nature of their work and the amount of work they performed**

As a threshold matter, it is difficult to understand the assertion that plaintiffs were misclassified given they each knowingly signed agreements stating they are independent contractors. Nonetheless, the facts of this case demonstrate the economic reality that the plaintiffs are indeed independent contractors.

The Plaintiffs were free to select and choose which bins they would wash, weld or repair. *See* **Ex. 1** (N. Eccleston Decl.). The Plaintiffs did not have a quota of bins each day and were not given an order in which to clean bins. *See* **Ex. 1** (N. Eccleston Decl.). The Plaintiffs were largely left to their own devices to complete wash repairs and wash bins. *See* **Ex. 6** (Buck Dep. 57:21-58:1). Plaintiff Darrell Buck also stated Noreen Eccleston and Defendant Mark Eccleston wouldn't be supervising [them] throughout the day. *See* **Ex. 6** (Buck Dep. 71: 21-72-1).

While it is true Plaintiffs had to perform welds which met certain quality standards, this fact does not weigh in favor of employee status. Quality control measures present here, namely visually inspecting repaired bins is consistent with independent contractor status. *See Roslov,* 218 F. Supp. 3d at 974 (quality control measures are entirely consistent with the standard role of a contractor hired to perform highly technical duties); *see also Herman v. Mid-Atlantic Installation Servs.,* 164 F. Supp. 2d 667, 672 (D. Md. July 27, 2000) ( requiring installers to meet MAT's and

12

Comcast's installation specifications is entirely consistent with the standard role of a contractor who is hired to perform highly technical duties). *see also C.C. Eastern, Inc., v. NLRB*, 60 F.3d 855, 859 (D.C. Cir. 1995) (when alleged employer's control over an aspect of performance is motivated by a concern for customer services, that control does not suggest an employment relationship because it is addressed to ends to be achieved. . . rather than the means to achieve the result).

Nothing in the Plaintiff's independent contractor agreements prevented them from providing their services or working elsewhere. *See* **Ex. 1** (N. Eccleston Decl.); **Ex. 3 & 4.**. Indeed, Plaintiff Watson confirmed Westwind never told him he couldn't work for someone else while he provided contract labor to Westwind. *See* **Ex. 5** (Watson Dep. 67: 22-24).

In addition, while it is true that Westwind was open for business from 6:00 A.M. to 2:30 P.M., Monday-Friday, that does not cut toward a finding of employee status. Merely setting a work schedule is not sufficient to support a finding that a given person is an employee rather than an independent contractor. *See Estate of Anthony J. Suskovich v. Anthem Health Plans of Va., Inc.,* 553 F.3d 559, 566 (7th Cir. 2009) (finding workers properly classified as independent contractors). In addition, "nor is the fact that a person is required to be at a given place at a given time or assigned. . . work sufficient to support an employee-employer relationship. *Alexander v. Rush N. Shore Med. Ctr.,* 101 F.3d 487, 493 (7th Cir. 1996).

In the present case, both Plaintiffs habitually missed work. *See* **Ex. 1** (N. Eccleston Decl.). For example, Plaintiff Darrell Buck was absent, late or left early approximately a combined one hundred and eleven (111) days from the time he began providing his services to the conclusion of his time providing services. *See* **Ex. 1** (N. Eccleston Decl.). Plaintiff Shamus Watson was absent, late or left early approximately a combined one hundred and forty-three (143) days from the time he began providing his services to the conclusion of his time providing his services. *See* **Ex. 1** (N.

Eccleston Decl.).  In his deposition, Plaintiff Shamus Watson testified he was never punished by Westwind for missing a workday. *See* **Ex. 5** (Watson Dep. 63: 17-25); *See O'Dell*, 2023 U.S. Dist. LEXIS 53084 *at 37-38 ("regularity with which she missed some or all of a shift without consequence cuts toward [independent contractor status]) (emphasis added).

Finally, Plaintiffs were not given assignments, quotas or when particular bins had to be repaired. *See* **Ex. 1** (N. Eccleston Decl.).  Plaintiffs were free to choose which bin out of the stack they would work on. *See* **Ex. 1** (N. Eccleston Decl.); **Ex. 5** (Watson Dep. 54: 6-8). In addition, Westwind did not control how productive Plaintiffs were. Plaintiffs could determine the amount of work they did and the specific bins they chose to wash or repair on a given day. The fact that Plaintiffs wore clothes provided by Westwind is also not sufficient indicia of control to warrant a finding of an employee-employer relationship. *Herman*, 164 F.Supp. 2d at 673.

As evidenced above, Plaintiffs frequently showed up late, missed work or left early. Plaintiffs had control over how much or how little work they would do on any given workday and had the freedom to select which bins they would work on. In addition, each Plaintiff had their own workstation and were largely left to their own devices without supervision.  All of these undisputed facts show that Plaintiffs controlled the work they did and did not perform for Westwind, which lends itself to a finding Plaintiffs are independent contractors.

### 3. The Plaintiffs had significant investments in their own business by claiming thousands in business deductions on taxes each year

Courts in the Eighth circuit typically look at how parties treat their relationship when determining whether an individual is an employee or independent contractor. Courts in the Eighth Circuit "acknowledged the important weight to be given to contractual terms— especially where the subsequent tax and benefits related behavior of the parties conforms to those terms. *O'Dell*, 2023 U.S. Dist. LEXIS 53084 *at 29.

14

On his 2021 tax return, Plaintiff Darrell Buck reported $29,232 in income. Buck filed a Schedule C with his 2021 tax return on which he deducted $6,202 in car and truck expenses, $300 on supplies and $1,176 on utilities and claimed $700 in depreciation. *See* **Ex. 11**.[2] This deduction decreased Mr. Buck's tax liability resulting in minimal personal income tax liability. Buck also claimed business related deductions on his 2022 tax returns. These type of deductions are "especially indicative of an independent contractor relationship." *See Karlson v. Action Process Serv. & Private Investigation, LLC,* 860 F.3d 1089, 1095 (8th Cir. 2017). The tax deductions utilized by Plaintiff Darrell Buck demonstrates this factor weighs in favor independent contractor status.

### 4. The Plaintiffs controlled their opportunity for profit or loss

Each Plaintiff was able to control their opportunity for profit or loss while they provided contract labor to Westwind. Plaintiffs were responsible for keeping track of how many bins they washed and/or repaired in any given week. *See* **Ex. 1** (N. Eccleston Decl.). The more bins repaired and/or washed led to pay raises and pay opportunities for the Plaintiffs. *See* **Ex. 5** (Watson Dep. 46: 22-47: 24); *See* **Ex. 1** (N. Eccleston Decl.) It is clear it was within the Plaintiffs' control to increase their opportunity for profit or loss.

In determining opportunity for profit or loss the relevant inquiry is whether the plaintiff "faced a real opportunity for either a profit or loss." *Krupicki,* 2014 U.S. Dist. LEXIS 46038 *at 18. In this case, the plaintiffs were not guaranteed a certain level of income a week. Thus, plaintiffs in this case would bear the economic loss if they were unable to work. In *Roslov,* the court concluded a satellite television technician was an independent contractor because he was in control

---

[2] Defendant counsel procured signed tax authorizations from Plaintiffs' counsel to release Plaintiffs tax returns. The Arkansas Department of Finance and Administration did not have any tax documents on record for the years 2021 and 2022 for Plaintiff Shamus Watson. *See Ex. 12*

of his profits and losses because "there were not agreements guaranteeing Roslov a certain income level each week." *Roslov,* 218 F. Supp. 3d at 977. In this litigation, the record is bereft of any agreements guaranteeing plaintiffs a certain level of income each week. Thus, the plaintiffs had discretion and control over their opportunity for profit and losses.

In this case the Plaintiffs were not given a certain quota of bins to repair or wash each day. *See* **Ex. 1** (N. Eccleston Decl.). Rather, the plaintiffs could repair and/or wash as many bins or as little bins as they wanted to during their shift. The more bins washed/repaired, the more the plaintiffs could earn and get paid. *See* **Ex. 1** (N. Eccleston Decl.); *see Herman,* 164 F. Supp. 2d at 674 (the extent to which an individual is able to generate more money based on skill and hard work may tend to establish independent contractor status). The plaintiffs had the opportunity and control to take on more work which was directly correlated to the plaintiffs' ability to earn more money for providing contract labor to Westwind. This factor supports the conclusion that the plaintiffs were independent contractors.

### 5. Skill and Initiative were required of Plaintiffs

Plastic bin repair and welding requires technical knowledge. *See* **Ex. 5** (Watson Dep. 25:20-26:6). Prior to contracting with Plaintiffs, Westwind would require Plaintiffs to demonstrate certain welding competency by performing a test weld. *See* **Ex. 6** (Buck Dep. 26: 5-9). In his deposition, Plaintiff Shamus Watson answered in the affirmative when asked whether that plastic welding is a bit more specialized than traditional welding. *See* **Ex. 5.** (Watson Dep. 31:20-23). Plaintiff Watson also stated a person would not be able to come off the street and do this type of job without training. *See* **Ex. 5** (Watson Dep. 31: 15-23). This type of welding requires specialty welding gun just made for this specific type of welding. *See* **Ex. 6** (Buck Dep. 27: 1-3). In addition,

each bin repair and weld had to meet certain quality standards. *See* **Ex. 5** (Watson Dep. 57: 15-21); **Ex. 6** (Buck Dep. 57: 14-17).

The fact "that companies test[] and certify each worker before a job demonstrates the specialized nature of the work. *Roslov,* 218 F. Supp. 3d at 977 The more specialized the skills required to perform the job, the more likely it is that the individual is an independent contractor. *O'Dell,* 2023 U.S. Dist. LEXIS 53084 *at 44. Additionally, individuals who work in trades are usually regarded as independent contractors. *Roslov,* 218 F. Supp.3d at 975. From their own testimony it is clear the jobs of plaintiffs required skill and initiative and could not be performed by just anyone. The skill and initiative factor cuts clearly toward independent contractor status.

### 6. The Relationship was not Permanent

The independent contractor agreement signed by each Plaintiff did not prohibit either Plaintiff from proving their services to other companies. Further, each Plaintiff was free to end their respective independent contractor agreements with Westwind at any time. *See Id.,* at 977 *("permanence is lacking" because there was no evidence that Roslov agreed to work for DirecTV for any duration or that Roslov was prohibited from obtaining similar work after he stopped installing DirecTV systems.") These freedoms indicate a lack of permanence with Westwind, which leans towards a classification as independent contractor. *See Bolden v. Callahan,* 595 F. Supp. 3d 727, 739 (E.D. Ark. Mar. 31, 2022) (stating eighteen-month work relationship cuts in favor of independent contractor status). The relatively short time periods in which the Plaintiffs provided contract services to Westwind (roughly nineteen months for Buck and twenty months for Watson) militates toward the finding of independent contractor status.

### 7. The Extent to Which the Plaintiff's work was integral to Westwind Operations

Westwind is in the plastic welding and repair industry. Defendants agree that this is the only factor which weighs in favor of finding the plaintiffs were employees. However, this factor is not determinative. The fact that a business depends on its independent contractors is not itself indicative of an employment relationship. *Roslov*, 218 F. Supp.3d at 975. A rule otherwise would transform any independent contractor into an employee simply because the work performed. . . was important to the business. *Id.* Further, the fact an individual's work was integral to the Defendant "only weighs slightly in favor of finding that the Plaintiffs should qualify as employees under the FLSA, and would not prevent the court from finding, as a matter of law, that the plaintiffs are independent contractors. *Browning v. Ceva Freight, LLC*, 885 F. Supp. 2d 590, 610 (E.D. N.Y. 2012). As such, little weight should be given to this factor in determining the status of Plaintiffs.

### C.  Plaintiff Darrell Buck's retaliation claim under the FLSA is without merit

Individual plaintiff Darrell Buck has also brought an individual claim of retaliation under the FLSA in this action. Buck alleged his termination was a direct and willful violation of the FLSA's anti-retaliation provisions. Plaintiff Buck cannot establish a cognizable claim for retaliation in this litigation as he is an independent contractor not subject to the FLSA or AMWA. Additionally, even if he was afforded the anti-retaliation protections of the FLSA and AMWA, Buck's retaliation claim would fail as a matter of law.

Claims of retaliation under the FLSA are subject to the *McDonnell Douglas* burden-shifting framework. *See Grey v. City of Oak Grove, Mo.,* 396 F.3d 1031, 1034 (8th Cir. 2005); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, (1973). To establish a prima facie case of retaliation, the plaintiff must show he participated in a statutorily protected activity, that the Defendant took an adverse employment action against him and that there was a causal connection between them. *Grey v. City of Oak Grove, Mo.,* 396 F.3d 1031, 1034-35 (8th Cir. 2005). If the

Plaintiff can establish a prima facie case, the defendant must articulate legitimate, non-retaliatory reasons for the Plaintiff's discharge. *Id.* In the summary judgment context, the issue is whether the evidence is sufficient to create a general issue of material fact on the question whether the defendant discharged the plaintiff in retaliation for actions protected by the FLSA. *Id.*

Plaintiff Darrell Buck's retaliation claims must fail as a matter of law. Buck alleged he was terminated because he complained about his pay. *See* (Compl. ¶96) (ECF 2). This is not true. Mr. Buck was let go due to his erratic and errant behavior and due to a chronic lack of dependability. *See* **Ex. 1** (N. Eccleston Decl.).   Mr. Buck would spend a large amount of time at Westwind's facility complaining about work and railing against the company. *See* **Ex. 1** (N. Eccleston Decl.). Further, Buck would exhibit a sharp temper in the shop frequently yelling at other contractors. *See* **Ex. 1** (N. Eccleston Decl). As previously noted, Buck also missed an exorbitant number of workdays. Mr. Buck's workplace behavior became untenable which led to the decision to cut ties with him.

Buck filed a Complaint with the United States Department of Labor, Occupational Safety and Health Administration on August 12, 2022 (the "OSHA Complaint"). In this OSHA Complaint, Buck alleged retaliatory employment practices in violation of the Occupational Safety and Health Act stemming from the filing of a health and safety complaint. *See* **Ex. 13.** An investigation was conducted, and the OSHA investigator ultimately determined that Mr. Buck was discharged on August 10, 2022. Importantly, the OSHA investigator also determined that "the available evidence indicates that [Westwind] had no knowledge of [Buck's] protected activity at the time the decision was made to terminate" Buck. *See* **Ex. 13.** Accordingly, OSHA did not find that retaliation occurred against Mr. Buck. Buck cannot show any causal connection in this

litigation. Mr. Buck cannot make out a case of retaliation under the FLSA and his retaliation claim should be dismissed as a matter of law.

### D.  Mark Eccleston is not individually liable to Plaintiffs

In addition to suing Westwind, the plaintiffs have also sued Mark Eccleston in his individual capacity. Mark Eccleston nor Westwind was the plaintiffs' employer. During the relevant time period, Mark Eccleston was not involved in the day-to-day operations of Westwind. *See* **Ex. 2**( M. Eccleston Decl). Additionally, Mark Eccleston did not have a hand in the pay practices of Westwind and did not supervise plaintiffs at any time relevant to this litigation. *See* **Ex. 2.**

Individual liability "as an employer under the FLSA is determined through actual involvement in the day-to-day activities." *Maurer v. Chico's FAS Inc.,* 2013 U.S. Dist. LEXIS 172121 (E.D. MO. Dec. 6, 2013). Mere allegations [individuals] were employers are insufficient to establish employer liability under the FLSA. *Id.* In the complaint, the plaintiffs rely on bald assertions that Mark Eccleston was the plaintiffs employer. Yet, upon review of the record, it is abundantly clear Mark Eccleston is not the plaintiffs' employer. For example, the independent contractor agreements plaintiffs executed were not signed by Mark Eccleston *See* **Ex. 3 & Ex. 4.** Mark Eccleston also did not issue payment to the plaintiffs. Payment would be issued from Westwind and Noreen Eccleston would sign the checks on behalf of Westwind. *See* **Ex. 1** (N. Eccleston Decl.)

The plaintiffs have not set forth any evidence that Mark Eccleston is an employer under the FLSA. It is clear from the record the plaintiffs cannot prove Mark Eccleston is an employer. Accordingly, Mark Eccleston cannot be held liable under the FLSA or AMWA. As such, summary

judgment should be granted to individual defendant, Mark Eccleston and he should be dismissed from this litigation.

### E. Neither Plaintiff can establish damages; therefore, the Complaint should be dismissed

The Plaintiffs burden of proof under the FLSA is threefold.[3] First, Plaintiffs must establish that they were employees and not independent contactors, which is a legal determination to be made by the Court. Second, Plaintiffs must prove by a preponderance of the evidence that they performed work that was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686-87 (1946); *see also Travis v. Banks,* 2022 U.S. Dist. LEXIS 80186 (W.D. Ark. May 3, 2022) ( "employee who sues for unpaid overtime has the burden of proving that he performed work for which he was not properly compensated). If these first two burdens can be met, then the plaintiffs must prove the extent of their damages. In the absence of records, "once the employee has shown work performed for which the employee was not compensated, and sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference," the burden shifts to the employer to produce evidence to dispute the reasonableness of the inference." *Holaway,* 771 F.3d at 1059 (citing *Carmody v. Kansas City Bd. Of Police Comm'rs,* 713 F.3d 401, 406 (8th Cir. 2013)).

In this case the plaintiffs have made bald assertions they worked hours which went uncompensated. *See* (Compl. ¶47) (ECF. 2). Plaintiffs also alleged they worked 15-30 minutes per day which went uncompensated for doffing and donning uniforms. *See* (Compl. ¶¶48-49). Plaintiffs have also made a claim against Westwind for failure to pay overtime. These bald assertions are not enough to create a triable issue of fact. *Holaway,* 771 F.3d at 1059. Rather,

---

[3] Claims under the AMWA should generally be determined using the same analysis as claims under the FLSA. *See Whitworth v. French Quarter Partners, LLC,* 2014 U.S. Dist. LEXIS 190419 at *26 (W.D. Ark. June 30, 2014).

Plaintiffs must provide specific evidence—with a meaningful explanation—to allow "a factfinder to find overtime hours 'as a matter of just and reasonable inference.'". *Id.*, at 1060. If the plaintiffs cannot sufficiently prove that damages exist in any given work week, then there is no question of fact to be tried. *See Carmody*, 714 F.3d at 406.

Plaintiffs initiated this lawsuit in September 2022. Plaintiffs' depositions were taken almost a year later on July 3ʳᵈ and 5ᵗʰ of 2023. Despite almost a year passing, Plaintiffs cannot put forth any specific evidence regarding damages. Plaintiffs' deposition testimony made it clear they cannot meet their burden on damages. For example, Plaintiff Watson testified that his attorney is working on coming up with a number to seek from Westwind. Further, when asked whether he had put any thought in to his damages, Mr. Watson stated, "No, I have not." *See* **Ex. 5** (Watson Dep. 85: 13-23). Incredibly, Mr. Watson could not even answer if he was making a claim for unpaid wages or unpaid overtime wages, instead just stating his "attorney is working on that." *See* **Ex. 5** (Watson Dep. 85: 24:86-1). When asked if he had documentation showing he worked more than eight hours a day, Mr. Watson stated, "No, I do not." *See* **Ex. 5** (Watson Dep. 89: 20- 90: 2). Plaintiff Darrell Buck also cannot show or put forth evidence on the number of hours he worked. In his deposition when asked if he kept his hours, he stated, "I didn't need to.. . I knew what time I got there and what time I left everyday. . . so it was kind of pointless." *See* **Ex. 6** (Buck Dep. 55: 3-22).

It is clear from the plaintiffs own testimony that they cannot produce any evidence to make a just and reasonable inference of the amount of overtime hours worked, and it is defendants position that plaintiffs did not work any overtime hours. Even under the relaxed "just and reasonable inference" standard the plaintiffs' vague claims of alleged overtime hours worked does not pass muster. Vague testimony that fails to reference specific days and hours worked is

22

insufficient proof of overtime hours, even under the relaxed evidentiary standard. *Travis*, 2022 U.S. Dist. LEXIS 80186 *at 22. In *Travis*, the court granted defendant's summary judgment motion "because there is not sufficient proof of Plaintiff's alleged unreported overtime." *Id.*, at *24. The facts of this case should yield the same result; summary judgment in the Defendants' favor.

In addition, neither plaintiff has set forth any evidence where it took 15-30 minutes to doff and don "uniforms." Nothing about these "uniforms" were special. In fact, they were just jeans and a button-up shirt. *See* **Ex. 5** (Watson Dep. 81: 5-7). These "uniforms" did not have Westwind insignia or labels on them. *See* **Ex. 5** (Watson Dep. 94: 4-7). Further, Mr. Watson testified that other welders would wear different uniforms and that all welders were not required to wear the exact same uniform. *See* **Ex. 5** (Watson Dep. 81: 12-18). These "uniforms" were simply Westwind providing a set of clean clothes independent contractors could wear at the facility. *See* **Ex. 1**(N. Eccleston Decl.). Other workers, who provided contract labor stated it took far less time—two to three minutes to change into these clothes and sanitize. *See* **Ex. 9** (C. Sanders Decl).

The "uniforms" independent contractors changed into were not really uniforms at all and were not unique gear nor essential to the job. They were a service provided by Westwind to the independent contractors. In the Eighth Circuit, "time spent donning and doffing non-unique gear was not compensable. . . and any time spent on these items is not work." *Guyton v. Tyson Foods, Inc.,* 767 F.3d 754 (8th Cir. 2014) (quoting *Reich v. IBP, Inc.,* 38 F.3d 1123, 1126 (10 Cir. 1994)). If time spent changing into the "uniforms" was primarily for the benefit of the independent contractors such is not compensable. *See Guyton* 767 F.3d at 759 (upholding summary judgment that donning and doffing not compensable). Plaintiffs claims for uncompensated time spent donning and doffing is without merit. Even if there was merit to this claim, Plaintiffs have failed

to present any evidence it took 15-30 minutes to change into blue jeans and a button up shirt. Indeed, it does not (or should not) take 15-30 minutes to change into blue jeans and shirts.

The *Holaway* case offers further instruction to the lack of proof of damages in the case at bar. In *Holaway*, the plaintiff's employer classified plaintiff as exempt from overtime, so there were no precise records of hours worked. *Holaway*, 771 F.3d at 1059. Despite using a relaxed damages standard, the Eighth Circuit upheld the district court's finding that the plaintiff failed to introduce sufficient evidence of the amount and extent of plaintiff's work for any particular week. *Id.* Instead the plaintiff in *Holaway* relied on contradictory and bare assertions of his overtime hours worked, without reference to specific days and hours worked. *Id.*, at 1059. The Eighth Circuit in *Holaway* affirmed the district court's ruling that the plaintiff failed to satisfy his burden of proof under the FLSA.

This Court should reach the same result as in *Holaway*. Plaintiffs provide nothing more than conjecture and speculation for hours actually worked in a given week and for time spent changing into work clothes. The plaintiffs have produced no evidence showing they worked overtime or showing they spent 15-30 minutes doffing and donning each day that went uncompensated. Defendants are entitled to summary judgment on Plaintiffs' wage and hour claims.

## IV. Conclusion

The Plaintiffs claims fail because they cannot establish they are employees subject to the protections of the FLSA and AMWA. Further, if adopted by this Court, the Plaintiffs would be unable to overcome the rebuttable presumption standard announced in *O'Dell v. Qualscript, LLC*, 2023 U.S. Dist. LEXIS 53084 (E.D. Ark. Mar. 28, 2023). Additionally, Plaintiffs cannot establish damages beyond conjecture and speculation and cannot prove individual defendant Mark

Eccleston was plaintiffs employer. For the reasons stated in Defendants' Motion for Summary Judgment, this Brief, and all supporting documents, this Court should grant Defendants' motion for summary judgment and dismiss this case with prejudice.

WHEREFORE, premises considered, Defendants respectfully request this Court grant Defendants Motion for Summary Judgment, that Plaintiffs' Complaint be dismissed with prejudice and that the Court award any and all other relief to which it finds the Defendants so entitled.

Respectfully Submitted,

**WESTWIND & ASSOCIATES, INC &
MARK ECCLESTON**

By: _Christopher J. Hooks_
Christopher J. Hooks, ABA #2020190
ROBERTSON, BEASLEY, SHIPLEY
& ROBINSON, PLLC
315 North 7TH Street
Fort Smith, AR  72901
Phone: (479) 782-8813
Fax: (479) 785-0254

**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on the 14th day of August 2023, a true and correct copy of the above and foregoing was sent via email to the following attorney of record:

Josh Sanford
Daniel Ford
SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, AR 72211

daniel@sanfordlawfirm.com
josh@sanfordlawfirm.com

By: _____
        Christopher J. Hooks