IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

**DARRELL BUCK and SHAMUS WATSON**     **PLAINTIFFS**

vs.       No. 2:22-cv-2153-PKH

**WESTWIND AND ASSOCIATES, INC.,**    **DEFENDANTS**
**and MARK ECCLESTON**

<u>**RESPONSE TO MOTION FOR SUMMARY JUDGMENT**</u>

## I. INTRODUCTION

Defendants' Motion for Summary Judgment (ECF No. 23) must be denied because it rests on faulty legal principles and because Plaintiffs have met their burden of proof. Specifically, Plaintiffs have provided evidence supporting the conclusions that Plaintiffs were misclassified as independent contractors while working for Defendants. And, based on the evidence presented, a reasonable jury could determine that Defendants violated the minimum wage and/or overtime provisions of the Fair Labor Standards Act ("FLSA") and the Arkansas Minimum Wage Act ("AMWA") and can reach a determination of damages. Because Plaintiffs have shown that genuine issues of material fact exist for trial in this case, Plaintiffs' claims cannot be dismissed, and Defendants' Motion should be denied in its entirety.

## II. STANDARD OF REVIEW

Rule 56 provides that summary judgment is proper when there are no genuine issues of material fact remaining in a case and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *see also*, *Celotex Corp. v. Catrett*, 477 U.S. 317,

Page 1 of 36
Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.
U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH
Response to Motion for Summary Judgment

322 (1986). The party moving for summary judgment has the initial burden of informing the Court of the basis for its motion and identifying the pleadings, admissions, discovery documents, and affidavits it contends show the absence of a genuine issue of material fact. *Id*. at 323. If the moving party has met its initial burden, then the nonmoving party must go beyond its own pleadings to designate specific controverted facts raising genuine triable issues. *Id.* at 325.

In order to show a genuine issue of fact, "the nonmoving party may not rely on mere denials or allegations in its pleadings, but must designate specific facts showing that there is a genuine issue for trial." *Barge v. Anheuser-Busch, Inc.,* 87 F.3d 256, 258 (8th Cir. 1996). A dispute is "genuine" if a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).  In deciding a motion for summary judgment, the facts and all reasonable inferences from those facts are viewed in the light most favorable to the nonmoving party.  *Lower Brule Sioux Tribe v. State of South Dakota*, 104 F.3d 1017, 1021 (8th Cir. 1997).

### III.    BACKGROUND

Defendants own and operate a business that repairs industrial plastic bins through a process called plastic welding. *See* Decl. of Noreen Eccleston ("Decl. N. Eccleston") ¶ 3, ECF No. 23-1. Defendants own a large facility in which they use the labor of individuals to perform these plastic welding services. *See* Defs.' Statement of Material Facts in Support of Defs.' Mot. for Summ. J. ("Statement of Material Facts"), ¶ 4, ECF No. 25. To acquire this labor, Defendants interview individuals who apply for the position. Dep. of Darrell Buck ("Dep. Buck"), ECF No. 23-6, at 25:1–24; Dep. of Shamus Watson ("Dep.

**Page 2 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

Watson"), ECF No. 23-5, at 24:21–25:11. Defendants do not require that these individuals have any background or prior experience in any sort of welding, plastic or otherwise. Dep. Buck 24:5–13 (describing Plaintiff Buck's onboarding process: "I was looking for a job, but not in plastic welding. Got no idea what that was about. And [Noreen Eccleston] just told me to come on in and give a shot."), 25:19–26:4 (stating that Plaintiff Buck had zero prior welding experience prior to working for Defendants); Dep. Watson 98:4–11 (stating that Plaintiff Watson learned how to weld at a prior job but had no experience in plastic welding).

Despite Defendants' claims otherwise, Separate Defendant Mark Eccleston ("Mr. Eccleston") was significantly involved in the operation and management of Defendants' business. Mr. Eccleston personally interviewed both Plaintiff Buck and Plaintiff Watson. Dep. Buck 25:5–12; Dep. Watson 24:21–25:11. Because neither Plaintiff had prior experience in plastic welding, both required training on how to use the equipment. Dep. Buck 26:5–12; Dep. Watson 30:14–31:6. Mr. Eccleston personally trained both Plaintiffs on how to perform plastic welding. Dep. Buck 26:5–12; Dep. Watson 30:14–31:6. Significantly, although neither Plaintiff had any prior experience in plastic welding, this training took only one afternoon. Dep. Buck 26:5 –12 ("I watched the owner cut and weld. And then I followed suit and did the same thing he did."); Dep. Watson 30:14 –31:6 ("[Mr. Eccleston] showed me how to weld and everything with—with the tools. . . . [H]e showed me how to do it.").

As a condition to performing labor for Defendants, Defendants required Plaintiffs to sign an Independent Contractor Agreement. *See* Independent Contractor Agreements, ECF Nos. 23-3, 23-4; Dep. Buck 27:14–28:24; Dep. Watson 33:20–34:12. Neither Plaintiff

**Page 3 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

was given the opportunity to negotiate the terms of the Agreement; they were simply required to sign the contract if they wanted to work for Defendants. Dep. Buck 27:14–28:24, 31:14–20. While Defendants classified Plaintiffs as independent contractors and exempt from the FLSA and AMWA, in reality they were Defendants' employees. *See* Dep. Buck 28:25–29:19.

Plaintiffs did not financially invest in or own any part of Defendants' business, share in the profits or losses of Defendants' business, advertise themselves as independent contractors, hire people to work for Defendants, nor help bring in new customers for Defendants. Dep. Watson 91:7–16. Defendants set Plaintiffs' hourly rates. Dep. Buck 46:13–14; Dep. Watson 43:13–16. Plaintiffs did not own their own plastic welding equipment; Defendants provided all equipment necessary to perform plastic welding services. Dep. Watson 92:23 –93:18. Defendants required Plaintiffs to wear uniforms, which Defendants provided. Dep. Buck 29:12–14, 41:1–42:14; Dep. Watson 93:19–94:11, 99:1–6. Plaintiffs worked for Defendants for an indefinite and ongoing period of time. Dep. Watson 90:22–91:3. Neither Plaintiff worked as plastic welders for any other company at the time they were employed by Defendants. Dep. Buck 53:21–55:2; Dep. Watson 91:4–6. In fact, Plaintiffs' work for Defendants was their only source of income while they worked for Defendants. Dep. Buck 53:21–55:2; Dep. Watson 91:4–6.

Defendants exercised control over when Plaintiffs worked and what work they were assigned. Dep. Buck 43:22–44:7, 46:3–10, 55:16–56:1, 61:10–14; Dep. Watson 21:12–24. Defendants' shop's operating hours were from 6:00 am to 2:30 pm, and Plaintiffs were expected to be at their stations during those hours. Dep. Buck 61:10–14. Defendants permitted a 30-minute break for lunch, but Plaintiffs were required to take their lunch break

**Page 4 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

at a certain time and had to remain at Defendants' shop; they were not given the freedom to take their break when or where they wanted. Dep. Watson 52:5 –53:19. While Plaintiffs were permitted to take time off for personal matters, Defendants accounted for their missed work by docking their hourly pay for the hours missed. Dep. Watson 91:20–92:14.

Plaintiffs were paid an hourly wage for the work they performed for Defendants. Dep. Buck 34:12–18; Dep. Watson 37:1–6, 43:13–16. When they began work for Defendants, Defendants told Plaintiff that they would be paid $14.00 per hour and would receive periodic raises. Dep. Buck 34:12–18; Dep. Watson 43:13–16. At the end of their time with Defendants, Plaintiffs were earning $17.00 per hour. Dep. Buck 46:11–14; Dep. Watson 43:13–16. At the end of each week, Plaintiffs would submit an invoice detailing their hours worked, which Defendants would convert to a piece rate invoice. Dep. Buck 34:20–37:22; Dep. Watson 37:22–38:2, 38:21–40:14. Specifically, Defendants calculated Plaintiffs' compensation based on their hourly rate multiplied by their hours worked, then took that compensation number and divided it by the number of bins each Plaintiff repaired in order to determine Plaintiffs' "piece rate" for the week. *See generally*, Buck Pay Invoices; Weekly Hours Report, attached as Exs. 1 and 2, respectively. This was done to create the illusion that Plaintiffs were piece rate workers so that Defendants could maintain the façade of using only contract labor rather than employees. Dep. Buck 30:19–31:2, 35:10–14.

Defendants required Plaintiffs to undergo a sanitation process prior to beginning their workdays. Dep. Buck 39:2–41:9; Dep. Watson 82:2–25. This process included sanitizing work boots, having their temperature taken, washing their hands, and a full change of clothes into a company uniform for 12 to 16 welders. Dep. Buck 39:2–41:9;

**Page 5 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

Dep. Watson 82:2–25. Because the shop only provided three changing rooms, Plaintiffs had to wait for a changing room to become available before changing their clothes. Dep. Buck 40:14–21; Dep. Watson 84:1–25. The entire process could take up to 30 minutes. Dep. Buck 41:1–9 (stating that Plaintiff Buck arrived at 5:30 am so that he could complete the sanitation process and be ready to work by 6:00 am).

Likewise, at the end of the day, Plaintiffs were required change back into their personal clothes, which necessitated another wait on the changing rooms' availability. Dep. Buck 52:3–17. This could take an additional 30 minutes. *Id*. (stating that Plaintiff Buck stopped working at 2:30 pm but "was usually out of there by 3:00 o'clock [sic]"). Plaintiff Watson was required to sanitize Defendants' equipment after-hours. Dep. Watson 96:11–21. This time was in addition to the 40 hours Plaintiffs spent repairing and/or washing bins and Plaintiffs were not paid for this time. Dep. Buck 70:1–12; Dep. Watson 94:12–95:3, 96:11–21.

## IV.    ARGUMENT

Defendants take the position that Plaintiffs' claims fail simply because: 1) Plaintiffs signed a contract with Defendants that stated they would be classified as independent contractors; 2) Defendants in fact treated Plaintiffs as if they were independent contractors; and 3) Plaintiffs cannot establish their damages. Defendants further argue that Mr. Eccleston's management of the business is insufficient to merit employer-status under the FLSA. Defendants' arguments lie on a faulty premise: It is axiomatic under the FLSA that mere titles and treatment are insufficient to determine a worker's employee status, but rather courts must examine the economic reality of the worker's relationship to the business. *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301 (1985)

**Page 6 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

(citing *Goldberg v. Whitaker House Co-op, Inc.*, 366 U.S. 28, 33 (1961)). Also, since Defendants failed to keep full records of hours worked, Plaintiffs need only prove that "[they] ha[ve] in fact performed work for which [they were] improperly compensated" and produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946).

## A.   Plaintiffs were misclassified as independent contractors.

Defendants' Motion for Summary Judgment presents a picture of Plaintiffs' employment in which highly skilled individuals offered their services to Defendants while enjoying the freedom to engage in as much or little actual work for Defendants as they liked. Defendants are only able to achieve this picture by both decontextualizing the evidence to only present certain aspects of Plaintiffs' work while ignoring others and completely mischaracterizing Plaintiffs' deposition testimony. Defendants controlled almost every aspect of Plaintiffs' work, from their schedule to the clothes that they wore, and then paid Plaintiffs by a convoluted mechanism designed to give the appearance of piece rate payments to independent contractors while in reality simply paying them an hourly wage. Because every aspect of Plaintiffs' relationship with Defendants demonstrates an employment relationship, Defendants' request for summary judgment must be denied.

1. <u>Legal Standard: Employee status is determined by the economic reality of the relationship of the parties.</u>

Whether a worker qualifies under the FLSA as an employee is determined by the economic realities test. *Karlson v. Action Process Serv. & Private Investigation, LLC*, 860 F.3d 1089, 1092 (8th Cir. 2017) (quoting *Tony & Susan Alamo Found.*, 471 U.S. at 301).

**Page 7 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

The point of applying the economic realities test is to determine whether the worker is economically dependent on the defendant for his work, or whether the worker really is in business for himself.  *See, e.g.*, *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 (11th Cir. 2013); *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008); *Baker v. Flint Eng'g & Constr. Co.*,137 F.3d 1436, 1440 (10th Cir. 1998); *Dole v. Snell*, 875 F.2d 802, 804 (10th Cir. 1989); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988).

With that overarching principle in mind, "the majority of courts analyze the following six factors":

> (i) the degree of control exercised by the alleged employer over the business operations, (ii) the relative investments of the alleged employer and employee, (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer, (iv) the skill and initiative required in performing the job, (v) the permanency of the relationship, and (vi) the degree to which the alleged employee's tasks are integral to the employer's business. *See, e.g.*, *Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343, 1348 (M.D. Fla. 1997); *see* 51 A.L.R. Fed. 702, § 2 (collecting cases on the economic reality test under the FLSA).

*Cruthis v. Vision's*, No. 4:12-cv-244-KGB, 2014 U.S. Dist. LEXIS 8773, at *7–8 (E.D. Ark. Jan. 24, 2014).

Notably, under the economic realities test, an employment contract labeling the worker as an independent contractor "may be relevant but is not controlling." *Karlson*, 860 F.3d at 1092 (8th Cir. 2017) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729, 67 S. Ct. 1473, 1476 (1947)). *See also Scantland*, 721 F.3d at 1311 ("This inquiry is not governed by the 'label' put on the relationship by the parties or the contract controlling that relationship, but rather focuses on whether 'the work done, in its essence, follows the usual path of an employee.'") (quoting *Rutherford*, 331 U.S. at 729); *Superior Care*, 840

**Page 8 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

F.2d at 1059 ("[E]mployer's self-serving label of workers as independent contractors is not controlling."); *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 667 (5th Cir. 1983) (explaining that "[a]n employee is not permitted to waive employee status," and affirming that welders were employees despite having signed independent contractor agreements).

Likewise, Form 1099-MISC tax forms and other government forms indicating independent contractor status, as well as lack of employee benefits, simply indicate that the employer engaged the worker as an independent contractor, not that the worker is actually an independent contractor under the FLSA. *See Olson v. Star Lift Inc.*, 709 F. Supp. 2d 1351, 1356 (S.D. Fla. 2010) (worker's receipt of Form 1099-MISC from employer does not weigh in favor of independent contractor status); *Harrell v. Diamond A Entertainment*, 992 F. Supp. 1343, 1353 (M.D. Fla. 1997) (holding that a worker's "characterization for tax purposes and the provision of employee benefits [is] not relevant" to the question of whether the worker is an employee under the FLSA). "Economic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA." *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 755 (9th Cir. 1979).

2. The economic reality of Plaintiffs' relationship with Defendants was employment.

Plaintiffs admit that they signed independent contractor agreements prior to working for Defendants, but whether the agreements create a rebuttable presumption or not,[1] the facts surrounding Plaintiffs' work for Defendants obviously and clearly show that

---

[1]   Only one court in the Eastern District of Arkansas has adopted the idea that an independent contractor agreement creates a rebuttable presumption that a worker is properly classified as an independent contractor. *See O'Dell v. Qualscript, LLC*, No. 4:21-CV-00260-LPR, 2023 U.S. Dist. LEXIS 53084 (E.D. Ark. Mar. 28, 2023). The *O'Dell* court specifically noted that the presumption would not apply in the case of "sham" agreements wherein "one party or both parties crafted and signed an independent contractor agreement knowing full well that the relationship was really going to be an employer-employee relationship," or "if the economic realities test clearly and convincingly establishes an employer-employee relationship in practice." *Id.* at *31–32. Here, not only does the evidence demonstrate the agreement is a

Page 9 of 36
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

the economic relationship between Plaintiffs and Defendants was one of employment. Defendants controlled almost every aspect of Plaintiffs' work, including pay scale, services performed, and working hours. Plaintiffs had no financial investment in Defendants' business and did not share in any of the profits or losses of the business. All business decisions were made by Defendants and plastic welders had no say in how the business was run. This and the facts discussed below show that Plaintiffs were misclassified as independent contractors. Each factor under the economic realities test weighs in favor of an employee-employer relationship between Plaintiffs and Defendants.

   i.   *Defendants controlled all business operations.*

Defendants' "ace in the hole" appears to be that Plaintiffs signed an employment contract in which they were designated independent contractors, but Defendants fail to mention that Plaintiffs were required to sign this contract *in order to perform services* for Defendants. Dep. Buck 27:14–28:24; Dep. Watson 33:20–34:12. Moreover, Plaintiffs did not negotiate the terms of the contracts or obtain any agreements to modify their terms. Dep. Buck 27:14–28:24, 31:14–20. Plaintiffs were not involved in creating the terms of the contract; it was a take-it or leave-it deal. Dep. Buck 27:14–22 ("They were kind of bullies. Kind of made me feel like I had to sign it in order to start the job."). From the very beginning of the relationship, Defendants exercised exclusive and absolute control over the terms of the relationship.  This was not an arms-length transaction between two independent businesses.

Defendants, somewhat disingenuously, claim that Plaintiffs exercised "substantial"

_____

sham (*see* Section 2.iii, *infra*), but the evidence also clearly and convincingly establishes that Plaintiffs were employees. Accordingly, the presumption does not apply in this case.

**Page 10 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

control over their work because they "were free to select and choose which bins they would wash, weld or repair." Br. in Supp. of Mot. for Summ. J., ECF No. 24, p. 12. As an initial rebuttal, Plaintiff Buck's explicit testimony was that Defendants dictated the order in which the bins were to be repaired. Dep. Buck 46:3–10 (when asked if there was a specific order in which the bins were to be repaired: "In order that they come in. You just take the next one in line off the clipboard; whatever they've got up there. Whatever they have ready."). But even if Plaintiffs were able to pick and choose which bin to repair, by this reasoning, a fast-food restaurant worker may exercise substantial control over his or her work by choosing to fill an order for nuggets before filling an order for a hamburger. That Plaintiffs were able to choose which bin to weld or wash does not alter the very basic fact that Plaintiffs only welded or washed the bins that Defendants acquired for them to weld and wash.

Defendants contracted with large-scale food processing companies such as Butterball and Tyson to repair bins; Plaintiffs were not privy to these negotiations or agreements, nor did Plaintiffs have a say in which companies Defendants chose to contract with. Dep. Watson 27:25–29:10 (stating that plastic welders received trucks of bins from these companies), 91:7–16 (stating that Plaintiff Watson never advertised plastic welding services). That Plaintiffs did not have quotas or assignments in repairing bins and "were largely left to their own devices" in the furtherance of their job duties is equally disingenuous and equally belied by the evidentiary record. Defendants make the technically correct claim that neither Mr. nor Mrs. Eccleston regularly supervised plastic welders at work, but neglect to mention this was because Defendants employed a supervisor who *did* regularly supervise plastic welders at work. Dep. Buck 57:24–58:4.

**Page 11 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

Clearly, Plaintiffs were permitted to exercise control over their own work only so long as they were performing the services for which Defendants hired them, on the bins acquired by Defendants, in the manner in which Defendants mandated, and to the quality specifications dictated by Defendants.

Defendants next claim "[n]othing in the Plaintiff's independent contractor agreements prevented them from providing their services or working elsewhere." Br. in Supp. of Mot. for Summ. J., p. 13. Again, a look at the record evidence shows this to be false. The independent contract agreements specifically state that Plaintiffs may not use any "trade secrets, inventions, innovations, processes, information, records and specifications" they had access to through their work with Defendants in the furtherance of any other business venture "either during the term of this Agreement or at any time thereafter." *See* Independent Contractor Agreements, ECF Nos. 23-3, 23-4. Accordingly, the independent contractor agreements explicitly prevented Plaintiffs from performing plastic welding services for anyone else while working for Defendants. Moreover, Mr. and Mrs. Eccleston specifically instructed Plaintiffs that they were not to perform plastic welding services anywhere else. Dep. Buck 52:18–53:4; Dep. Watson 67:2–13. Nor could they as there are no other plastic welding businesses in the area.

To the extent that Defendants are arguing that Plaintiffs theoretically could have taken on a second job in the afternoon, this argument likewise fails. That Plaintiffs could have taken on a second job outside of plastic welding does not render them independent contractors. If a fry-cook from McDonald's takes a second job as a fry-cook at Burger King, is he no longer a McDonald's employee because he has a second job? This is nonsense. Regardless, neither Plaintiff worked at any other job nor had any alternate

**Page 12 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

source of income for the duration of their time with Defendants. Dep. Buck 53:21–55:2; Dep. Watson 91:4–6. And, while Defendants claim Plaintiff Watson "confirmed Westwind never told him he couldn't work for someone else while he provided contract labor to Westwind," Plaintiff Watson's actual testimony is as follows:

> Q: I asked if, whenever you were providing your services to Westwind, from roughly 6:00 a.m. to 2:30, they never told you you couldn't go do something that afternoon for somebody else, did they?
>
> A: Oh, I mean. They said we—they'd rather us not go work somewhere else, because they don't want us tired—tired in the morning whenever we come to work.
>
> Q: But they never said you couldn't go work for somebody else; is that correct?
>
> A: No.

Dep. Watson 67:15–24. Even if the technical possibility of working a second job in the afternoon was evidence of Plaintiffs' independent contractor status, which it's not, Defendants made it clear to Plaintiffs even this was not preferred.

Finally, Defendants very clearly and obviously dictated the manner and schedule of Plaintiffs' work. Plaintiffs were expected to work a set schedule from 6:00 am to 2:30 pm. Dep. Buck 38:16–23 ("They expected us to be suited up and at our states at 6:00 am"), 52:3–4 (stating that welders were "done working at 2:30"), 55:16–56:1 (stating that Plaintiff Buck knew his schedule because he worked the same hours every day and that he did not set his own hours), 61:10–14 ("They wanted us at the bins from—they expected us to be at the bins from 6:00 a.m. to 2:30."); Dep. Watson 35:15–16 (stating welders were expected to start working at 6:00 am); 52:5–53:19 (stating work hours were from 6:00 am to 2:30 pm with a thirty-minute onsite lunch break). Although Defendants

**Page 13 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

provided Plaintiffs with a mandatory 30-minute lunch break, Plaintiffs were not permitted to leave Defendants' shop during lunch. Dep. Watson 52:5–19. Plaintiffs were not permitted to stop working and take their lunch break whenever they felt like it; lunch breaks were done in 30-minute shifts pre-determined by Defendants. *Id*. at 52:20–53:7.

While Plaintiffs were able to miss work when necessary, this freedom resulted in their pay being docked for the hours missed. Dep. Watson 91:20–92:14. And, while Plaintiff Buck maintains that the actual reason for his termination was his report on Defendants to OSHA, Defendants told him that he was terminated due to tardiness. Dep. Buck 50:6–8, 56:6–11. *See also* Decl. N. Eccleston ¶ 6 (euphemistically stating that Defendants "parted ways" with Plaintiff Buck in part because of "his chronic lack of dependability"). Defendants admit to tracking when plastic welders were in and out of the shop, ostensibly because Defendants were "getting taken advantage of by workers who left early, were absent or who arrived late." Statement of Material Facts, Nos. 27, 28. Defendants obviously expected plastic welders to be in the shop working during business hours; otherwise, they would not track plastic welders' hours worked or feel "taken advantage of" when the plastic welders were not present during business hours.

Defendants exerted near total control over every aspect of the business operations. Defendants created and enforced the business model, policies, and procedures. Defendants controlled when, how and what work Plaintiffs performed. Plaintiffs merely performed assignments given out by Defendants, under the watchful eye and directives of Defendants' supervision.

        ii.   *Plaintiffs have no investment in Defendants' business.*

Defendants make the laughable claim that Plaintiffs had "significant investments

**Page 14 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

in their own business" merely because Plaintiff Buck claimed business expense deductions on his taxes. Defendants make no claim regarding Plaintiff Watson's investments at all. The record evidence in the case clearly shows that neither Plaintiff purchased any equipment to perform services for Defendants; Defendants provided all the tools and equipment necessary. Dep. Buck 67:13–15; Dep. Watson 92:23–93:18. Defendants even provided the uniforms Plaintiffs were required to wear, and required Plaintiffs to leave the uniforms at the shop so that Defendants could have them laundered. Dep. Buck 29:12–14, 41:1–42:14; Dep. Watson 93:19–94:11, 99:1–6. Plaintiffs did not use their personal vehicles in the furtherance of their job duties except to get to and from work. Dep. Watson 92:22–93:8.

A multitude of case law dictates that in order for this factor to weigh in the employer's favor, the worker's investment should be significant in relation to the overall business being conducted. *See Baker*, 137 F.3d at 1442 (comparing rig welders' investment to employer's "hundreds of thousands of dollars of equipment at each work site"); *see also Snell*, 875 F.2d at 810–11 (comparing cake decorators' $400 investment in their tools to employers' business investments, including paying for rent, advertising, operating expenses, and labor, in addition to supplies and decorating equipment); *Sec'y of Labor, United States Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1537 (7th Cir. 1987) (reasoning that where workers provided their own gloves, and the employer provided the farm equipment, land, seed, fertilizers, and living quarters, their work was not independent of the employer); *Hopkins*, 545 F.3d at 344 (comparing each worker's individual investment to employer's overall investment in the business); *Real*, 603 F.2d at 755 (strawberry growers' investment in light equipment, including hoes, shovels, and picking

**Page 15 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

carts was "minimal in comparison" with employer's total investment in land and heavy machinery). Defendants provided specialized welding equipment, a facility in which to work, and uniforms, in addition to the business's overhead such as acquiring customers and advertising. Even assuming that personal tax deductions can be construed as an "investment" in Defendants' business, Defendants' extensive investment heavily outweighs any theoretical investment on Plaintiffs' part. Plaintiffs' minimal investments, compared to Defendants' significant investments, show that Plaintiffs were economically dependent on Defendants for their work.

      *iii.*   *Plaintiffs were dependent on Defendants for increase in profits.*

Defendants' claim that Plaintiffs were paid per bin repaired and therefore controlled their increase in profit because they could simply wash more bins is not supported by the evidence. In fact, Defendants' claim that Plaintiffs were paid by the bin at all is simply untrue as demonstrated both by Plaintiffs' deposition testimony and the underlying records by which Plaintiffs' pay was calculated.

Upon hire, Defendants informed Plaintiffs that they would be paid an hourly rate starting at $14.00 per hour with the promise of increases throughout their time with Defendants. Dep. Buck 34:20–35:10; Dep. Watson 36:4–6. At the end of their employment, both Plaintiffs were earning $17.00 per hour. Dep. Buck 46:11–14; Dep. Watson 43:13–16. Plaintiffs were required to submit weekly invoices that provided their hours worked, not number of bins repaired. Dep. Buck 34:20–37:22; Dep. Watson 37:22–38:2, 38:21–40:14. Notably, although Defendants admit that Plaintiffs submitted their own invoices, and despite Plaintiffs' request for all documentation regarding hours worked and pay received, Defendants did not provide a single invoice submitted by Plaintiffs during

**Page 16 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

discovery. *See* Decl. N. Eccleston ¶ 16 (stating that Plaintiffs submitted weekly invoices to receive payment). Instead, Defendants produced typed documents stating each Plaintiff's total hours worked per week. *See* Weekly Hours Report, attached as Ex. 2.

After Plaintiffs submitted their invoice, Defendants converted their time records into a "per bin" calculation to provide some semblance of a piece rate pay method to bolster their claim that Plaintiffs were independent contractors. To make the sham more convincing, Defendants tacked on a "rent" fee to provide fake evidence that they were charging Plaintiffs for the use of their facility and equipment. Dep. Buck 35:9–14; Dep. Watson 38:21–39:5. The proof for this sham lies in the time records in this case. For example, according to Defendants' records, during the week of July 15, 2022, Plaintiff Buck worked 40 hours exactly. *See* Weekly Hours Report, p. 8. Plaintiff Buck's corresponding invoice states that he was paid for 12 bins at $58.91 per bin. *See* Buck Pay Invoices, p. 3. This comes to a total payment of $707.00. *Id*. Defendants then subtracted out Plaintiff Buck's "rent" of $27.00, resulting in a net pay of $680.00 for that week. When $680.00 is divided by 40 hours, simple math shows that Plaintiff Buck was paid exactly $17.00 per hour for that week.[2]

Even without a week-by-week review of Plaintiff Buck's pay invoices, a mere glance at Defendants' pay records provides additional evidence that Defendants' claim that Plaintiffs were paid per bin is false. Defendants' time records state that the shop was "closed for CoVid [sic]" during the week of February 12, 2021, yet Plaintiff Buck was paid for 10 bins at a rate of $62.80. *See* Weekly Hours Report, p. 5; Buck Pay Invoices, p. 8.

---

[2]     Not every invoice for each pay period comes to an exact even dollar amount, but any discrepancies can be attributed to human error in transposing Plaintiffs' submitted invoices to the typed copy of reported hours that Defendants produced.

**Page 17 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

After "rent" was subtracted, Plaintiff Buck's net pay was $720.00 for the week in which he performed no work because the shop was closed. Buck Pay Invoices, p. 8. Notably, assuming Defendants were paying Plaintiff Buck for a 40-hour week, this amounts to an hourly wage of exactly $18.00 per hour for a week in which Plaintiff Buck repaired zero bins.

Defendants' sham pay practices are made even more clear by an examination of their records regarding how many bins each Plaintiff repaired and/or washed and the rate they were paid per bin. *See* Weekly Bin Reports, attached as Ex. 3. Presumably, if Defendants paid Plaintiffs a piece rate per bin, then the rate would be fixed and the only change would be the number of bins repaired or washed. Even if Defendants had different rates for different bins, there would be a fixed rate per bin-type, and Plaintiffs would be required to record the types of bins repaired or washed as well as the number. But Defendants' records show that the rate per bin changed on a weekly basis. *See* Weekly Bin Reports.

There is no rhyme or reason to the bin rate: Plaintiff Buck earned $98.00 per bin the week of January 22, 2021, in which he repaired only six bins, but only $52.90 per bin the following week, in which he repaired 12 bins. *See* Weekly Bin Reports, p. 6. This discrepancy is notable because Plaintiff Buck worked nearly identical hours during those weeks. *See* Weekly Hours Report, p. 5 (stating that Plaintiff Buck worked 39 hours and 30 minutes the week of January 22, 2021, and 39 hours and 20 minutes the week of January 29, 2021). Thus, Plaintiff Buck's "piece rate" per bin was lower in the second

**Page 18 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

week because he repaired more bins but worked the same hours.[3] Because he worked roughly the same hours, he was paid roughly the same amount in the two weeks, *even though he repaired more bins in the second week*. *See* Buck Pay Invoices, p. 5-6 (showing that Plaintiff Buck was paid $560.00 for the week of January 21, 2021, and $607.50 for the week of January 29, 2021).

This same analysis can be performed on Plaintiff Watson's records. During the week of April 1, 2022, Plaintiff Watson washed 40 bins and was paid $17.10 per bin. *See* Weekly Bin Reports, p. 4. The following week, Plaintiff Watson washed 125 bins, which is *three times* as many bins as the week before, but was paid only $5.10 per bin. *Id*. Plaintiff Watson worked 36.5 hours in the first week and 36.75 hours in the second. *See* Weekly Hours Report, p. 4. Thus, Plaintiff Watson was paid $684.00 for the week of April 1, 2022 ($17.10 x 40 bins), which amounts to $18.00 per hour (($684.00 - $27.00 "rent") / 36.5 hours = $18.00 per hour), and he was paid $637.50 for the week of April 8, 2022 ($5.10 x 125 bins), which amounts to almost $17.00 per hour (($637.50 - $27.00 "rent") / 36.75 = $16.61 per hour).

Accordingly, Plaintiffs patently were not paid a piece rate. They were paid by the hour, and Defendants engaged in some pretty heavy-handed charades to mask it. This is significant for this case for two reasons. First, as mentioned above, this is clear evidence that Defendants' independent contractor agreement was a sham, which disallows any rebuttable presumption the agreements may have created. Defendants fully intended to pay Plaintiffs an hourly wage, informed Plaintiffs that they would pay them an

---

[3]     Plaintiff Buck's pay invoices show that the "piece rates" for these weeks were further reduced when Defendants charged Plaintiff Buck "rent." *See* Buck Pay Invoices, p. 5. When Plaintiff Buck's take-home pay is divided by his hours worked, his hourly rate is between $14.00 and $15.00 per hour for those weeks. *See id*.

**Page 19 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

hourly wage, and in fact paid them an hourly wage. But because Defendants knew that they must at least pretend to treat Plaintiffs as independent contractors to reap the benefit of the FLSA exemption, they performed a highly complicated series of calculations to give the mere appearance that Plaintiffs were paid a piece rate. Accordingly, the independent contractor agreement should provide no weight to the Court's analysis.

Second, that Plaintiffs were paid by the hour and not per bin is clear evidence that they could not increase in their profit margin. Defendants' records clearly demonstrate that Plaintiffs could not simply earn more money by repairing or washing more bins as Defendants claim, because the records show that any increase in efficiency was met with a corresponding decrease in piece rate. *See generally*, Weekly Bin Reports. To put it simply: The more bins Plaintiffs repaired or washed, the less they were paid per bin. *Id*. As Plaintiff Watson noted, the only method by which Plaintiffs could receive more money was to receive an increase in their hourly rate. Dep. Watson 46:22–47:24 (Q: "So the quicker—the quicker the weld, the more bins you could get to, the more you could put on your invoice, the more you could in theory receive for compensation?" A: "Well, we would still get the same pay. But they would give us a pay raise. Like, they would give us more an hour."). Any opportunity to increase their profit margin was illusory, and Plaintiffs' desire to earn more money was wholly reliant on Defendants' whim.

     iv.    *Plaintiffs' skill in performing their job.*

While plastic welding requires highly technical skills, Defendants are incorrect that the complexity of the performance of a worker's duties automatically weighs in favor of independent contractor status. "[T]he fact that workers are skilled is not itself indicative of independent contractor status." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060 (2d

**Page 20 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

Cir. 1988). A worker may possess technical skills, but he or she must also use those skills in an independent manner for this factor to weigh in favor of the putative employer. *Id. See also Roslov v. DirecTV Inc.,* 218 F. Supp. 3d 965, 977 (E.D. Ark. 2016) (citing to *Brock* in support of the finding that cable technicians who used their skills to solicit independent customers were independent contractors).

Plaintiffs' work did not require the skill and initiative required of an independent business owner.  The zenith of Plaintiffs' work required only the technical skills required to weld and/or wash plastic bins. And this was a skill that required no prior welding experience or certification and was easily learnable in a single afternoon. Dep. Buck 26:5–12 ("I watched the owner cut and weld. And then I followed suit and did the same thing he did."); Dep. Watson 30:14 –31:6 ("[Mr. Eccleston] showed me how to weld and everything with—with the tools. . . . [H]e showed me how to do it."); 31:24–32:2 (stating Plaintiff Watson did not have a welding certification before starting work for Defendants).

Moreover, Plaintiffs did not exercise the initiative normally associated with independent business owners. Plaintiffs performed the work that Defendants directed them to perform for Defendants customers; Plaintiffs did not have their own customers. Plaintiffs did not expand their plastic welding services outside of Defendants' facility. Plaintiffs were not involved in obtaining new plastic welding customers, and Defendants never encouraged Plaintiffs to seek new business on their behalf. Plaintiffs were not in open market competition with other plastic welders who worked for Defendants; they all simply got bins from the broken bin pile and repaired them. Dep. Watson 54:1–23. If Plaintiffs and the other plastic welders were independent business owners, then they should have been competing amongst each other, but no plastic welder ever submitted

**Page 21 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

competitive bids for work. Instead, Defendants paid Plaintiffs a flat hourly rate and the income was based on how many hours Plaintiffs worked.

### v.   Plaintiffs understood their positions to be indefinite.

Defendants claim this factor weighs in their favor because Plaintiffs' position was not "permanent," but the standard is not whether the position was incapable of being terminated but rather whether the parties understood that the relationship was ongoing and indefinite. *Dole v. Snell*, 875 F.2d 802, 811 (10th Cir. 1989) ("'Independent contractors' often have fixed employment periods and transfer from place to place as particular work is offered to them, whereas 'employees' usually work for only one employer and such relationship is continuous and of indefinite duration."). Defendants' twisting of the legal understanding of "permanency" to include any option to end the relationship undermines the entire theory of "at-will employment." Obviously either party could have ended the working relationship at any time; the question is whether the parties understood that Plaintiffs would work for Defendants until either Plaintiffs or Defendants decided otherwise.

Plaintiffs' work for Defendants fit this definition. *See* Dep. Watson 90:20–91:3 ("I planned on working there indefinite."). This is further proven by the manner in which each Plaintiff ended his working relationship with Defendants. Plaintiff Buck's relationship with Defendants ended unwillingly when Defendants told him not to come back (commonly referred to as "terminated his employment"). Dep. Buck 50:6–8, 56:6–11. Even Defendants' evidence makes it clear that Plaintiff Buck was fired. *See* Decl. N. Eccleston ¶ 6. Defendants are very careful to avoid any language implicating an employment relationship, but the gist of Defendants' claim is that Defendants fired Plaintiff Buck

**Page 22 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

because they believed he was rude in the shop, was often late, and often complained about his work. *Id.* (stating that Defendants "parted ways" with Plaintiff Buck because of "volatile behavior in the workplace and due to his chronic lack of dependability and constant complaints about West Wind [sic]."). Plaintiff Watson's "parting of ways" with Defendants is likewise indicative of an employment relationship: Plaintiff Watson quit because he got a better offer with another company. Dep. Watson 68:11–21.

In sum, unlike independent business owners, who typically bounce from customer to customer and work by the job, Plaintiffs were employed for an indefinite period of time and believed their positions to be permanent until one party decided otherwise.

> vi.   *Plaintiffs' job duties were integral to Defendants' business.*

Defendants admit that Plaintiffs' jobs as plastic welders were integral to Defendants' business of plastic welding. Br. in Supp. of Mot. for Summ. J., p. 18.

Defendants exercised exclusive control over Defendants' business operations, invested in the business in amounts that vastly outweigh any theoretical investments from Plaintiffs, exclusively controlled Plaintiffs' opportunity for profit and loss, taught Plaintiffs all the skills necessary for the job and ensured they had the equipment needed, brought Plaintiffs on to work for an open-ended and indefinite period, to work in a position integral to Defendants' business. Not a single factor weighs in Defendants' favor. The economic reality of this relationship was very clearly and obviously one of employer and employee. Defendants request for summary judgment must therefore be denied.

**B.   Plaintiff Buck has made a *prima facie* case of retaliation.**

Pursuant to the above, Plaintiff Buck is an employee and subject to the anti-retaliation provisions of the FLSA and the AMWA. Further, as with the economic reality

**Page 23 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

of Plaintiffs' relationship with Defendants, Defendants alternately twist facts and mischaracterize the evidence to argue that Plaintiff Buck's retaliation claim should fail.

Plaintiff Buck's clear testimony is that he threatened to contact the Occupational Health and Safety Administration (OSHA) due to practices at Defendants' facility that he felt were unsafe, and that Defendants threatened to fire him if he did. Dep. Buck 49:19–23 ("It was, basically, they were trying to raise me up on their forklifts without being harnessed or anything. And I wasn't safe—feeling safe doing that. And I told them, if they were going to force me to keep getting up there, I would be contacting OSHA. And told me, "'Well, if you contact OSJA, we will let you go immediately.'"), 72:19–73:2 ("I told them several times I wasn't safe—didn't feel safe being hoisted that high up on a forklift, standing on a fork in work boots, like, with no harness, I mean. And they kept asking me to do it. I told them I was going to contact OSHA over it."). Plaintiff filed a complaint with OSHA on August 5, 2022, and was fired on August 10. Dep. Buck 73:8–20.

Moreover, it is Defendants' own position that Plaintiff was terminated due to "constant complaints about West Wind [sic]." Decl. N. Eccleston ¶ 6. While Defendants are naturally careful to avoid stating the basis of these complaints, the fact that Defendants acknowledge that Plaintiff Buck's dissatisfaction with certain practices was at least part of the reason they decided to "part ways" with Plaintiff Buck bolsters Plaintiff Buck's claim that he was fired for complaining about pay and unsafe work practices. Plaintiff Buck has raised a genuine issue regarding whether he was fired due to retaliation.

**C.    Plaintiffs have presented a genuine question of fact as to Mr. Eccleston's individual liability as an employer.**

As owner and operator of Defendant Westwind and Associates, Inc. ("Westwind"), Mr. Eccleston set policies and procedures that affected control over employees such as

**Page 24 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

Plaintiffs' work such that he is an "employer" under the FLSA. Mr. Eccleston's physical presence and personal oversight, as well as the policies he enacted and control over Westwind he exerted, set the standards for the day-to-day operations and functions of Plaintiffs' job duties. Mr. Eccleston's control was felt through Plaintiffs' employment such that he was their employer under the FLSA.

1. <u>Legal Standard: Employers under the FLSA.</u>

"The [FLSA] statute is a remedial one, written in the broadest possible terms so that the minimum wage provisions would have the widest possible impact in the national economy." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984). To that end, the FLSA defines employment with a "striking breadth" that "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992). The test is, once again, one of "economic reality," rather than "technical concepts." *See Karlson*, 860 F.3d at 1092 (quoting *Tony & Susan Alamo Found.* 471 U.S. at 301); *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961); *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012). Key factors under this test of economic reality include whether an alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010) (citing *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990)); *see also Irizarry v. Catsimatidis*, 2013 U.S. App. LEXIS 13796, 11 (2d Cir. N.Y. July 9, 2013); *Baker v. Stone County*, 41 F. Supp. 2d 965, 980 (W.D. Mo. 1999) (applying the same four-factor test).

**Page 25 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

"On its face, the definition of 'employer' can be read to cover owners or officers of a corporation in their individual capacities." *Wandrey v. CJ Prof'l Satellites, Inc.*, No. 5:14-CV-05087, 2014 U.S. Dist. LEXIS 125971, at *8 (W.D. Ark. Sep. 9, 2014) (citing *Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002)). A corporate officer with operational control over the corporation's day-to-day functions may be an employer as contemplated by the FLSA if the officer supervises the relationship between the corporation and its employees. *See Wirtz v. Pure Ice Co., Inc.*, 322 F.2d 259, 262–63 (8th Cir. 1963). Likewise, the Eighth Circuit has held that "an individual who was the primary shareholder, as president and general manager, of a corporation, and who engaged in 'active management' of the corporation' such as hiring and setting wages 'could be an employer under the FLSA." *Wandrey*, 2014 U.S. Dist. LEXIS 125971, at *9 (quoting *Chambers Constr. Co. v. Mitchell*, 233 F.2d 717, 724 (8th Cir. 1956)).

Courts have found individual executives of various companies to be employers for FLSA purposes even when those individuals had almost no interaction with employees and delegated almost all supervision and management to others. *See, e.g.*, *Hicks v. Lindsey Mgmt. Co.*, No. 3:18-cv-00133 KGB, 2019 U.S. Dist. LEXIS 221298, at *16-17 (E.D. Ark. Sep. 5, 2019 (finding a question of fact as to whether the owner was an employer when he "overs[aw] the executive management of the accounting, human resources[,] and legal departments," but did not have "any operational control over the employees."); *White v. 14051 Manchester, Inc.*, 301 F.R.D. 368, 389 (E.D. Mo. 2014) (executive was an employer even though she had little contact with employees because "she drafted at least part of the employee handbook and she signed the employees' paychecks."); *Rikard v. U.S. Auto Prot., LLC*, No. 4:11CV1580 JCH, 2013 U.S. Dist.

Page 26 of 36
Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.
U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH
Response to Motion for Summary Judgment

LEXIS 134704, at *15–16 (E.D. Mo. Sep. 20, 2013) (executive was an employer because he "attended marketing meetings, met with [the company's] accountants, handed out bonus checks to managers, disciplined and ultimately terminated [an employee], and eventually decided to close the company); *Saunders v. Ace Mortg. Funding, Inc.*, No. 05-1437 (DWF/SRN), 2007 U.S. Dist. LEXIS 85392, at *13–15 (D. Minn. Nov. 16, 2007) (owners were employers because they formulated and implemented employee payment plans; were responsible "either directly or indirectly" for hiring and firing employees, and were specifically responsible for hiring the supervisors who oversaw other employees; "[a]nd they had a significant financial stake in [the company], as evidenced by their 20% ownership interest in the company as well as their 2006 capital contribution and personal guarantees on the company's line-of-credit.").

2.   Mr. Eccleston was an individual employer under the FLSA and the AMWA.

Based on the broad definition of employer described above, Mr. Eccleston is clearly liable as Plaintiffs' employer under the FLSA. Mr. Eccleston was intimately involved in the day-to-day operations of Westwind, even if he was not physically present in the facility's shop during business hours. In fact, it is entirely possible for Mr. Eccleston to never once personally interact with one of Westwind's plastic welders and yet still be liable for improper compensation as their employer. As described above, the FLSA does not require individual employers to personally hire or fire employees, set specific schedules or control work conditions, or maintain employment records, so long as that individual has sufficient control over those who do hire and fire, set schedules, or maintain work conditions. Mr. Eccleston, as owner and president of Westwind, was the brain and impetus behind all of the policies that affected Plaintiffs' employment.

**Page 27 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

Regardless, as described by Plaintiffs, Mr. Eccleston took a direct and active role in the policies and procedures that dictated the way Westwind's plastic welders performed their job duties. To begin with, Mr. Eccleston personally interviewed and hired Plaintiffs. Dep. Buck 25:5–12 (stating that Plaintiff Buck interviewed with Mr. and Mrs. Eccleston), 27:4–10 (stating that Mr. and Mrs. Eccleston gave Plaintiff Buck a hire date and told him when to start working); Dep. Watson 24:21–25:11 (stating that Plaintiff Watson interviewed with Mr. and Mrs. Eccleston). As part of the interview, Mr. Eccleston demonstrated how to operate the equipment and how to repair the plastic bins, then had each Plaintiff perform a test weld. Dep. Buck 26:5 –12 ("I watched the owner cut and weld. And then I followed suit and did the same thing he did."); Dep. Watson 30:14 –31:6 ("[Mr. Eccleston] showed me how to weld and everything with—with the tools. . . . [H]e showed me how to do it."). Mr. Eccleston gave Plaintiff Watson a tour of the shop and gave him a rundown on how to perform his job duties. Dep. Watson 30:14–17. Mr. Eccleston clearly not only had the power to hire Plaintiffs, but actively used that power by interviewing and hiring Plaintiffs.

Mr. Eccleston supervised and controlled Plaintiffs' work schedules and conditions of employment. Plaintiff Watson testified that Mr. Eccleston occasionally asked him to work on weekends, showing that Mr. Eccleston had control over Plaintiffs' schedules. Dep. Watson 53:10–14. Mr. Eccleston started and ended Plaintiffs' workdays by unlocking and locking the shop. Dep. Watson 53:15–19 (stating that Mr. Eccleston locked the shop at the end of the workday) *See also* Decl. of Donny Thatcher ("Decl. Thatcher") ¶ 6, ECF No. 23-7; Decl. of Chester Sanders ("Decl. Sanders") ¶ 3, ECF No. 23-9 (both stating that either "Mark or Noreen Eccleston will open the shop doors" in the morning).

**Page 28 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

Plaintiff Buck testified that Mr. Eccleston appraised the quality of Plaintiffs' work and determined if it met applicable standards, demonstrating that Mr. Eccleston controlled the conditions of Plaintiffs' employment. Dep. Buck 57:14–20. Mr. Eccleston often directly supervised Plaintiffs' while they were working, and when he didn't, he employed another supervisor to ensure the work was being done. Dep. Watson 54:24–55:6. While Mr. Eccleston was not always physically present within the shop during business hours, Plaintiffs knew he was on the premises and available. Dep. Buck 57:21–58:4; Dep. Watson 55:9–15.

Mr. Eccleston determined the rate and method of Plaintiffs' payment. As the owner and president of Westwind, Mr. Eccleston is the impetus behind all policies implemented at Westwind, and so it was Mr. Eccleston who decided to pay Plaintiffs an hourly rate disguised as a piece rate, and it was Mr. Eccleston who decided to misclassify Plaintiffs as independent contractors. *See Holmes v. Stetson Courier, Inc.*, No. 4:20-cv-191-DPM, 2022 U.S. Dist. LEXIS 193488, at *3–4 (E.D. Ark. Oct. 24, 2022) (noting that the individual defendant personally determined to classify the plaintiffs as independent contractors, which was the impetus behind the lawsuit). Finally, Mr. Eccleston maintained Plaintiffs' employment records. Mr. Eccleston accepted weekly timesheets from Plaintiffs and was instrumental in cutting their checks. Dep. Watson 40:7–14 (stating that plastic welders could give their weekly invoices to either Mr. Eccleston or his wife).

Mr. Eccleston's role and engagement at Westwind meets all four requirements for a determination of individual liability as an employer. Plaintiffs have presented a genuine issue of fact as to whether Mr. Eccleston was their individual employer, and Defendants' Motion for Summary Judgment must be denied.

**Page 29 of 36**
**Darrell Buck, et al. v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

**D.     A reasonable fact finder could find that Plaintiffs are owed unpaid overtime and minimum wages under the FLSA.**

Defendants allege that Plaintiffs have not provided sufficient evidence to demonstrate that they worked more than 40 hours per week. While claiming that Plaintiffs' testimony evidence is merely "bald assertions," Defendant unironically offers unsubstantiated, boiler-plate declarations from various employees to support its claim that Plaintiffs could not possibly have worked overtime while, once again, ignoring the inconvenient aspects of Plaintiffs' testimony. Regardless, it is well-settled that concrete, fact-based testimony, such as given by Plaintiffs, is sufficient to prove liability under the FLSA.

1.  Plaintiffs do not have to produce evidence other than their own personal knowledge to prove liability.

It is well-settled law that the burden of keeping accurate employment records is on the employer rather than the employee. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686–88 (1946). This obligation to maintain accurate time records is always on the employer, not the employee; "the employer cannot transfer his statutory duty to his employees." *Goldberg v. Cockrell*, 303 F.2d 811, n.1 (5th Cir. 1962) (citing *Mitchell v. Reynolds*, 125 F. Supp. 337, 340 (W.D. Ark. 1954) ("[W]hile there is nothing to prevent an employer from delegating to his employees the duty of keeping a record of their hours, the employer does so at his own peril. He cannot escape the record-keeping provisions of the Act by delegating that duty to his employees.")); *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 363 (2d Cir. 2011) ("[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours.").

**Page 30 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

In the absence of accurate records, an employee may prove that he or she worked uncompensated overtime in a variety of ways, one of which is through a "meaningful, consistent explanation of the hours the employee claims to have worked." *Christman v. New Age Distrib.*, No. 4:19-cv-00488-LPR, 2021 U.S. Dist. LEXIS 49860, at *15 (E.D. Ark. Mar. 17, 2021) (citing *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1058–60 (8th Cir. 2014)). *See also Jones v. St. Francis Cnty.*, No. 2:19-CV-00148-BRW, 2021 U.S. Dist. LEXIS 40326, at *6 (E.D. Ark. Mar. 4, 2021) (stating that the plaintiff's claims did not fail as a matter of law when he was the only witness to his overtime hours). While "[v]ague and unspecific testimony will not do," an adequate description of "'specific dates worked, specific hours worked, or money owed'" is sufficient to demonstrate than an employee worked uncompensated hours. *Christman*, 2021 U.S. Dist. LEXIS 49860, at *15 (quoting *Carmody v. Kan. City Bd. of Police Comm'rs*, 713 F.3d 401, 407 (8th Cir. 2013)).

2. Plaintiffs detailed and consistent testimony creates an issue for trial.

To begin with, Plaintiffs' dispute Defendants' description of Plaintiffs' work, which is completely self-serving, overly generalized and omits critical details as well as entire aspects of Plaintiffs' work. Particularly ironic, given the umbrage taken by Defendants over Plaintiffs' testimony, is Defendants' reliance on generic declarations from current employees who have not been deposed. *See* Decl. Thatcher, Decl. Sanders.

"Happy camper" declarations detailing current employees' perceptions and understandings of other employees' work have little evidentiary value in the face of Plaintiffs' clear and consistent recollection of their own personal experience. *See, e.g.*, *Mitchell v. Acosta Sales, LLC*, 841 F. Supp. 2d 1105, 1118 (C.D. Cal. 2011) (citing *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011)). This type of

**Page 31 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

evidence is simply insufficient to overcome Defendants' clear and uncontroverted burden to maintain accurate records. 29 C.F.R. § 516. Defendant cannot rely on its own internal time-keeping records because Defendants did not record the time Plaintiffs spent undergoing Defendants' required sanitation process. As described more thoroughly above, Plaintiffs are therefore permitted to rely on their own recollection to "create a just and reasonable inference" to show the extent of their hours worked, which Plaintiffs have done. *Mt. Clemens*, 320 U.S. at 687.

In a feeble attempt to discredit Plaintiffs' testimony, Defendants have provided declarations stating that changing into Defendants' required uniform only took two or three minutes because the uniform was simply a button-down shirt and blue jeans or khakis. *See* Decl. of Andy Dulaney ("Decl. Dulaney") ¶ 5, ECF No. 23-8; Decl. Sanders ¶ 3. But even Plaintiffs admit that merely changing clothes only took a few minutes. Dep. Watson 84:2–5. Defendants have conveniently ignored the entire basis for Plaintiffs' claim: The issue was not that the uniform was overly complicated, the issue was that Defendants only provided three changing rooms for all the welders to use, necessitating a wait period of up to 20 minutes. Dep. Buck 40:14–21; Dep. Watson 84:6–14. According to Plaintiff Buck, Defendants provided three "makeshift" changing rooms for up to 16 welders to use, "And we are all having to take turns and wait; you know, waiting for all of these guys to change out before you can get in." Dep. Buck 40:14–21. Plaintiff Watson's testimony corroborates Plaintiff Buck's:

> But over there we had to wait on everybody and, plus, find our uniforms in a little coat rack that everybody had to find their uniforms at the same time. And then we could go to the dressing rooms, which we had to wait on everybody to get dressed and wait our turn. And then we would finally be able to get undressed out of our street clothes, and then get

**Page 32 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

dressed into the uniforms; which, like I said, took about 15, 20
minutes.

Dep. Watson 84:6–14. *See also id*. at 83:6–7 ("Because we only had, like, three dressing
rooms, and we had 16 people.").

Defendants similarly ignore the aspects of Plaintiffs' testimony that described the
additional sanitation processes Defendants required. In addition to changing clothes,
Defendants required Plaintiffs to sanitize their work boots, have their temperature taken,
and wash their hands. Dep. Buck 39:2–41:9; Dep. Watson 82:2–25. Each of these
processes had to be completed for all plastic welders, and Plaintiffs were required to wait
their turn for every one of them. Dep. Buck 39:13–40:25 (describing the inefficiencies
inherent in the process); Dep. Watson 82:2–84:1 (stating that each plastic welder had to
wait their turn during the sanitation process). The entire process could take up to 30
minutes, and this was just to start the workday. Dep. Buck 41:1–9 (stating that Plaintiff
Buck arrived at 5:30 am so that he could complete the sanitation process and be ready
to work by 6:00 am). At the end of the day, Plaintiffs were required to change back into
their personal clothes which necessitated another wait on the changing rooms'
availability. Dep. Buck 52:3–17. This could take an additional 30 minutes. *Id*. (stating that
Plaintiff Buck stopped working at 2:30 pm but "was usually out of there by 3:00 o'clock
[sic]"). Plaintiff Watson was required to sanitize Defendants' equipment after-hours. Dep.
Watson 96:11–21.

Defendants' claim that Plaintiffs' time spent donning a uniform is noncompensable
because the uniforms were provided for Plaintiffs' benefit is nonsensical. Defendants'
claim the "clothing service" was "optional," and provided for the benefit of Plaintiffs
"because some workers live in rural areas, without electricity or running water." Decl.

**Page 33 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

Dulaney ¶ 4. This claim is directly contradicted by Plaintiffs' testimony. The uniform policy, along with the rest of the sanitation process, was implemented "because of COVID." Dep. Buck 29:12–14. *See also id*. at 42:19–23 ("They did not want our outside clothes inside their shop."); Dep. Watson 83:2–84:1, 84:21–85:4 (stating that the entire sanitation process was implemented in 2020 during the COVID-19 outbreak). Further, the uniforms were not an "optional clothing service;" Defendants required all plastic welders to change clothes before beginning their work. Dep. Buck 42:10–14 ("They just ordered Cintas uniforms. They didn't have their company name put on them. They just ordered the uniforms and made us put them on."), 42:19–23 ("it was a control thing because of COVID"); Dep. Watson 93:19–94:3 (stating that plastic welders were not permitted to wear a t-shirt and shorts because "they wanted us to wear their uniforms.").

This clear and consistent testimony is the basis of Plaintiffs' claims. While Defendants highlight the portions of Plaintiffs' testimony in which they could not name a specific number of damages sought in response to a loaded question, Plaintiffs' testimony provides consistent evidence that Plaintiffs were required to work uncompensated hours and a clear estimate of those hours. In *Jones v. St. Francis County*, a plaintiff was unable to answer an almost identical question regarding damages estimate during his deposition, but the Eastern District of Arkansas noted that the plaintiff's testimony regarding the activities he engaged in off-the-clock and his reasonable estimate of overtime hours worked was sufficient to create a reasonable inference such that summary judgment was inappropriate. No. 2:19-CV-00148-BRW, 2021 U.S. Dist. LEXIS 40326, at *6 (E.D. Ark. Mar. 4, 2021).

Here, like in *Jones*, Plaintiffs' testimony that Defendants ignore creates a question

**Page 34 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

of fact regarding their overtime worked. When specifically asked how many overtime hours he believed he worked in a week, Plaintiff Buck stated, "Approximately two and a half to three hours." Dep. Buck 76:18–23. This is a credible estimate based on his earlier testimony that he worked between 15 and 30 minutes of unpaid time in the mornings and another 15 to 30 minutes in the afternoons. Coupled with Defendants' documentation showing that Plaintiff Buck regularly worked right up to or exactly at 40 hours per week during his time with Defendants, Plaintiff Buck has raised a reasonable inference that he worked uncompensated overtime in at least one workweek. *See generally*, Weekly Hours Report.

Plaintiff Watson's estimate of overtime worked is likewise credible. When asked to estimate the number of overtime hours he worked per week, Plaintiff Watson responded, "Probably about four or five." Dep. Watson 97:17–21. This is a reasonable estimate based on Plaintiff Watson's prior testimony concerning his unpaid work in the mornings and his unpaid work sanitizing equipment in the afternoon. As with Plaintiff Buck, Defendants' records show that Plaintiff Watson regularly worked right up to 40 hours of recorded time,[4] meaning that his unrecorded work put him over 40 hours in at least one workweek. *See generally*, Weekly Hours Report.

Because Plaintiffs have provided a reasonable inference that they worked uncompensated overtime work, and because a reasonable factfinder could determine the

---

[4]       It is worth noting that Defendants' typed records never once show either Plaintiff working more than 40 hours in a week, although they regularly worked exactly 40 hours. Again, Defendants have not produced the invoices that Plaintiffs submitted at the end of each week, and instead rely exclusively on their own internal hourly logs. Plaintiffs did not often work more than 40 *recorded* hours in a week, but it did happen on occasion and Defendants logs do not note it. Dep. Watson 96:11–25 (stating that Plaintiff Watson listed some of his overtime hours on his weekly invoice, but that time was not included on his paycheck).

**Page 35 of 36**
**Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.**
**U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH**
**Response to Motion for Summary Judgment**

extent of those hours based on Plaintiffs' testimony, Defendants' Motion for Summary Judgment must be denied.

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court find that Plaintiffs have raised a genuine issue of material fact for trial on the issues raised by Defendants in their Motion for Summary Judgment. Defendants' request for summary judgment should be denied in its entirety.

Respectfully submitted,

**DARRELL BUCK and SHAMUS WATSON, PLAINTIFFS**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

Daniel Ford
Ark Bar No. 2014162
daniel@sanfordlawfirm.com

Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com

Page 36 of 36
Darrell Buck, et al.  v. Westwind and Associates, Inc., et al.
U.S.D.C. (W.D. Ark.) Case No. 2:22-cv-2153-PKH
Response to Motion for Summary Judgment

**Invoice**

522593

| SOLD TO | West Wind & Assoc. | | SHIP TO | | | | | |
|---------|------|---|---------|---|---|---|---|---|
| ADDRESS | | | ADDRESS | | | | | |
| CITY, STATE, ZIP | | | CITY, STATE, ZIP | | | | | |

| CUSTOMER ORDER NO. | SOLD BY | TERMS | F.O.B. | DATE 8-4-22 |
|---|---|---|---|---|

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---------|---------|-------------|-------|------|--------|
| | | Darrell Buck | | | |
| | | 10 bins @ | $ 67.30 | | |
| | | Less rent | $ 27.00 | | |
| | | | | | $ 673. 00 |
| | | | | | 27. 00 |
| | | | | | $ 646. 00 |

**Invoice**

522594

| SOLD TO | SHIP TO |
|---|---|
| West Wind & Assoc. | |
| ADDRESS | ADDRESS |
| CITY, STATE, ZIP | CITY, STATE, ZIP |

| CUSTOMER ORDER NO. | SOLD BY | TERMS | F.O.B. | DATE 8-10-22 |
|---|---|---|---|---|

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| | | Darrell Buck | | | |
| | | 6 bins @ | $ 63.29 | | |
| | | Less rent | $ 27.00 | | |
| | | | | | $ 379.75 |
| | | | | | 27.00 |
| | | | | | $ 352.75 |

Buck000002

**Invoice**

522591

| SOLD TO | West Wind & Assoc. | SHIP TO | |
|---|---|---|---|
| ADDRESS | | ADDRESS | |
| CITY, STATE, ZIP | | CITY, STATE, ZIP | |

| CUSTOMER ORDER NO. | SOLD BY | TERMS | F.O.B. | DATE 7-15-22 |
|---|---|---|---|---|

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| | | Darrell Buck | | | |
| | | 12 bins a) | $ 58.91 | | |
| | | Less rent | $ 27.00 | | |
| | | | | | $ 707. 00 |
| | | | | | 27. 00 |
| | | | | | $ 680. 00 |

Adams 5840    09-15

Buck000003

**Invoice**

522592

| SOLD TO | | | | SHIP TO | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| West Wind & Assoc. | | | | | | | | | |
| ADDRESS | | | | ADDRESS | | | | | |
| CITY, STATE, ZIP | | | | CITY, STATE, ZIP | | | | | |

| CUSTOMER ORDER NO. | | SOLD BY | | TERMS | | F.O.B. | | DATE 7-21-22 | |
|---|---|---|---|---|---|---|---|---|---|

| ORDERED | SHIPPED | DESCRIPTION | | | | PRICE | UNIT | AMOUNT | |
|---|---|---|---|---|---|---|---|---|---|
| | | Darrell Buck | | | | | | | |
| | | 11 bins @ | | | | $ 51.90 | | | |
| | | Less rent | | | | $ 27.00 | | | |
| | | | | | | | | $ 571.00 | |
| | | | | | | | | 27.00 | |
| | | | | | | | | $ 544.00 | |

Buck000004



300906

**Statement**

DATE 1-22-21

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck
6 bins @ $98          $588.00
Less rent            $ 27.00
                     ───────
                     $ 560.00

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT |
|---------|--------------|--------------|--------------|
|         |              |              | $560.00      |

Buck000005



300907

**Statement**

DATE 1-29-21

TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

12 bins @ $52.90    $ 635.50
Less rent    $ 27.00
   $ 607.50

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | |

adams DC5812

01-11

Buck000006



300908

**Statement**

DATE 2-4-21

TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

6 bins @ $98.00          $ 508.00
Less rent $28.00         $  28.00
                         $ 480.00

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | |
|---|---|---|---|---|

adams DC5812                                              91-11

Buck000007



300910

**Statement**

DATE 2-12-21

TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

10 bins @ $62.80          $ 748.00
Less rent $28.00          $ 28.00
                          $ 720.00

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | |

adams DC5812                                    01-11

Buck000008



300911

**Statement**

DATE 2-26-21

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

6 bins @ $104.60     $ 628.00
Less rent $28.00     $ 28.00

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | $600.00 |

Buck000009



300912

**Statement**

DATE 3-5-21

TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

8 bins @ $78.37
Less rent $27.00

$ 627. 00

$ 27. 00

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | $ 600. 00 |

adams DC5812                                               01-11

Buck000010



300913

**Statement**

DATE 3-12-21

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

| | | |
|---|---|---|
| 9 bins @ $69.60 | $627. | 00 |
| Less rent $27.00 | $ 27. | 00 |
| | $600. | 00 |

CURRENT   OVER 30 DAYS   OVER 60 DAYS   TOTAL AMOUNT

adams· DC5812                    01-11

Buck000011



300914

**Statement**

DATE 3-19-21

TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

| | | | |
|---|---|---|---|
| 10 bins @ | $46.70 | $667.00 |
| Less rent | $27.00 | $ 27.00 |

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT |
|---|---|---|---|
| | | | $640.00 |

adams DC5812

01-11



300915

**Statement**

DATE 3-26-21   TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

| | | |
|---|---|---|
| 12 bins @ | $ 55.58 | $ 667.00 |
| Less rent | $ 27.00 | $ 27.00 |

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT $ 640.00 |

adams DC5812

Q1-11

Buck000013



300916

**Statement**

DATE 4-2-21

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

| | | | |
|---|---|---|---|
| 10 bins @ | $53.90 | $539.00 | |
| Less rent | $27.00 | $ 27.00 | |
| | | $ 512.00 | |

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT |
|---|---|---|---|
| | | | $ 512.00 |

adams DC5812   91-11

Buck000014



300917

**Statement**

DATE 4-9-21

TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

10 bins @          $ 66.70

Less rent         $ 27.00

$ 667.00

$ 27.00

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | |
|---------|--------------|--------------|--------------|---|
| | | | $ 640.00 | |

adams DC5812



300918

**Statement**

DATE 4-16-21

TO West Wind & Assoc:

IN ACCOUNT WITH

Darrell Buck

13 bins @   $ 51.30   $ 603.00
Less rent   $ 27.00   $ 27.00

$ 667.00
$ 27.00

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | $ 640.00 |

adams DC5812                                      01-11

Buck000016



300919

**Statement**

DATE 4-23-21

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

12 bins @ $ 44.9%

Less rent $ 27.00

$ 539.00

$ 27.00

$

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | 512 | 00 |
|---------|--------------|--------------|--------------|-----|-----|

adams DC5812

01-11

Buck000017



300920

**Statement**

DATE 4-30-21   TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

| | | | | | |
|---|---|---|---|---|---|
| | | 10 bins @ | $60.30 | | $603.00 |
| | | Less rent | $27.00 | | $27.00 |

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | $ 576.00 |
|---|---|---|---|---|

adams DC5812   01-11

Buck000018



300921

**Statement**

DATE 5-7-21

TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

| | | Darrell Buck | | |
|---|---|---|---|---|
| | | 13 bins @ | $ 51·30 | $667.00 |
| | | Less rent | $ 27.00 | $ 27.00 |

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | 640. 00 |
|---|---|---|---|---|

adams DC5812

01-11

Buck000019



300922

**Statement**

DATE 5-14-21

TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

15 bins @ $ 42.33

Less rent $ 27.00

$ 635.00

27.00

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | 608. 00 |
|---|---|---|---|---|

adams DC5812

01-11

Buck000020

300924

**Statement**

DATE 5-21-21   TERMS

TO  West Wind & Assoc.

IN ACCOUNT WITH

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| Darrell Buck | | | | | |
| 13 bins @ | $ 40.61 | | | | |
| Less rent | $ 27.00 | | | | |
| | | | $ | 555 | 00 |
| | | | $ | 27 | 00 |
| | | | # | | |

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | 528. | 00 |

adams· DC5812

01-11

Buck000021



300925

**Statement**   DATE 5-28-21   TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

| | | | | |
|---|---|---|---|---|
| Darrell Buck | | | | |
| 20 bins @ | ₿ 34.35 | | | |
| Less rent | ₿ 27.00 | | | |
| | | ₿ 687.00 | | |
| | | ₿ 27.00 | | |
| | | ₿ | | |

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | 660.00 |
|---|---|---|---|---|

adams DC5812                                          01-11



300926

**Statement**   DATE 6-4-21   TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

15 bins @   $ 34.80
Less rent   $ 27.00

$ 522. 00
$ 27. 00

CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT 495.- 00

adams DOS812                                    01-11

Buck000023



300927

**Statement**  DATE 6-11-21  TERMS

TO  West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

20 bins a)        $ 34.35
Less rent        $ 27.00

                              $ 687.00
                              $  27.00

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | 660. 00 |

adams DC5812                                                    01-11

Buck000024



300928

**Statement**   DATE 6-18-21   TERMS

TO  West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

20 bins @   $ 34.35
Less rent    $ 27.00

$ 687.00
$ 27.00

$

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | 660. 00 |
|---|---|---|---|---|

adams DC5812                                    01-11

Buck000025



300929

**Statement**  DATE 6-25-21  TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

12 bins @        $ 57.25
Less rent        $ 27.00

                          $ 687.00
                          $  27.00

                          $

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | 660.00 |
|---------|--------------|--------------|--------------|--------|

adams DC5812                                    01-11

300930

**Statement**   DATE 7-2-21   TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

| | | | | | |
|---|---|---|---|---|---|
| | | Darrell Buck | | | |
| | | 2 bins @ | $ 211.50 | | |
| | | Less rent | $ 27.00 | | |
| | | | | $ 423.00 | |
| | | | | $ 27.00 | |
| | | | | | |
| | | | | $ | |

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | 396.00 |
|---|---|---|---|---|

adams DC5812                                                   01-11

Buck000027



300931

**Statement**

DATE 7-9-21   TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

| | | | | | |
|---|---|---|---|---|---|
| | Darrell Buck | | | | |
| | 10 bins @ | $ 55.50 | | | |
| | Less rent | $ 27.00 | | | |
| | | | | $ 555.00 | |
| | | | | $ 27.00 | |
| | | | | $ | |

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | 528.00 |
|---|---|---|---|---|

adams DC5812                                    01-11

300932

| Statement | | DATE 7-16-21 | | TERMS | | |
|---|---|---|---|---|---|---|

TO  West Wind & Assoc.

IN ACCOUNT WITH

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | Darrell Buck | | | | |
| | | 12 bins @ | $ 57.25 | | | |
| | | Less rent | $ 27.00 | | | |
| | | | | | $ 687.00 | |
| | | | | | $ 27.00 | |
| | | | | | $ | |

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | 660.00 |
|---|---|---|---|---|

adams DC5812

01-11

Buck000029

300933

**Statement**

DATE 7-23-21

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

| | | | | | |
|---|---|---|---|---|---|
| 10 bins @ | | $ 67.05 | | | |
| Less rent | | $ 27.00 | | | |
| | | | $ 670.50 | | |
| | | | $ 27.00 | | |
| | | | $ 643.50 | | |

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT |
|---|---|---|---|
| | | | 643.50 |

adams· DC5812

01-11

Buck000030

300934

**Statement**   DATE 7-30-21   TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

16 bins @        $ 43.56
Less rent        $ 27.00

                 $ 1697.00
               - $   27.00

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | $ 670.00 |
|---------|--------------|--------------|--------------|----------|

adams DC5812                                01-11

Buck000031



300935

**Statement**

DATE 8-6-21

TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

11 bins @ $ 38.00
Less rent $ 27.00

$ 579.75
27.00

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT $ 552.75 |

adams DC5812

01-11

Buck000032



300936

## Statement

DATE 8 - 13 - 21       TERMS

TO  West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

12 bins @     $ 42.57
Less rent     $ 27.00

$ 537.85
27.00

$ 510.85

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | 510 | 85 |
|---------|--------------|--------------|--------------|-----|-----|

01-11

Buck000033



300937

**Statement**  DATE 8-20-21  TERMS

TO *West Wind & Assoc.*

IN ACCOUNT WITH

Darrell Buck

13 bins a)    $ 51.53
less rent     $ 27.00

                          $ 697.00
                             27.00

CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT $ 670.00

adams DC5812                               01-11

300938

**Statement**   DATE 8-27-21   TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

10 bins @   $56.30
Less rent    $27.00

$ 563.00
   27.00

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | $ 536.00 |

adams DC5812                                                01-11

Buck000035



300939

**Statement**

DATE 9-2-21   TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

13 bins @ $ 53.61
Less rent $ 27.00

$ 697.00
27.00

$

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | 670.00 |

adams DC5812        01-11

Buck000036



300940

**Statement**  DATE 9-10-21  TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

| | | | | | | |
|---|---|---|---|---|---|---|
| Darrell Buck | | | | | | |
| 20 bins @ | | $ | 34.75 | | | |
| 13 bins @ | | $ | 38.15 | | | |
| Less rent | | $ | 27.00 | | | |
| | | | | $ | 496.00 | |
| | | | | | 27.00 | |

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | $ 469.00 |
|---|---|---|---|---|

adams DC5812

01-11



300941

**Statement**

DATE 9-17-21

TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

| | | | | |
|---|---|---|---|---|
| Darrell Buck | | | | |
| 20 bins @ | | | $ 34.85 | |
| Less rent | | | $ 27.00 | |
| | | | $ 697.00 | |
| | | | 27.00 | |

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | $ 670.00 |

adams DC5812

01-11

Buck000038



300942

**Statement**   DATE 9-24-21   TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

20 bins @   $ 34.85
Less rent   $ 27.00

$ 697.00
27.00

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | $ 670. | 00 |

adams DC5812                                                                01-11

Buck000039



300943

**Statement**

DATE 10-1-21   TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

20 bins @   $ 34.85
Less rent   $ 27.00

$ 697.00
27.00

$ 670.00

CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT 670.00

adams DC5812                                        01-11

Buck000040



300944

**Statement**

DATE 10-8-21

TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

22 bins @ $ 31.68
Less rent $ 27.00

$ 697.00
27.00

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT $ 670.00 |
|---------|--------------|--------------|-----------------------|

adams DC8812                                                    01-11

Buck000041

522551

**Invoice**

| SOLD TO | West Wind & Assoc. | SHIP TO | |
| ADDRESS | | ADDRESS | |
| CITY, STATE, ZIP | | CITY, STATE, ZIP | |

| CUSTOMER ORDER NO. | SOLD BY | TERMS | F.O.B. | DATE 10-15-21 |

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| | | Darrell Buck | | | |
| | | 15 bins @ | $ 37.53 | | |
| | | Less rent | $ 27.00 | | |
| | | | | | $ 563.00 |
| | | | | | 27.00 |
| | | | | | $ 536.00 |

Buck000042

522552

**Invoice**

SOLD TO: West Wind & Assoc.
ADDRESS:
CITY, STATE, ZIP:

SHIP TO:
ADDRESS:
CITY, STATE, ZIP:

CUSTOMER ORDER NO. | SOLD BY | TERMS | F.O.B. | DATE 10-22-21

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---------|---------|-------------|-------|------|--------|
| | | Darrell Buck | | | |
| | | 20 bins @ | $ 34.85 | | |
| | | Less rent | $ 27.00 | | |
| | | | | | $ 697.00 |
| | | | | | 27.00 |
| | | | | | $ 670.00 |

Buck000043

522553

**Invoice**

| SOLD TO | West Wind & Assoc. | | SHIP TO | |
| ADDRESS | | | ADDRESS | |
| CITY, STATE, ZIP | | | CITY, STATE, ZIP | |

| CUSTOMER ORDER NO. | SOLD BY | TERMS | F.O.B. | DATE 10-29-21 |

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| | | | | | |
| | | Darrell Buck | | | |
| | | 5 bins @ | $ 139.40 | | |
| | | Less rent | $ 27.00 | | |
| | | | | | $ 697.00 |
| | | | | | 27.00 |
| | | | | | $ 670.00 |

Adams 5840                                              09-16

Buck000044

522554

**Invoice**

SOLD TO  West Wind & Assoc.

ADDRESS

CITY, STATE, ZIP

SHIP TO

ADDRESS

CITY, STATE, ZIP

| CUSTOMER ORDER NO. | SOLD BY | TERMS | F.O.B. | DATE 11-5-21 |
|---|---|---|---|---|

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | Darrell Buck | | | |
| | | 10 bins @ | $ 56.30 | | |
| | | Less rent | $ 27.00 | | |
| | | | | | |
| | | | | | $ 563.00 |
| | | | | | 27.00 |
| | | | | | $ 536.00 |

Ladene 5840

09-15

Buck000045

522555

## Invoice

| SOLD TO | West Wind & Assoc. | | | SHIP TO | | | | |
| ADDRESS | | | | ADDRESS | | | | |
| CITY, STATE, ZIP | | | | CITY, STATE, ZIP | | | | |

| CUSTOMER ORDER NO. | SOLD BY | TERMS | F.O.B. | DATE 11-12-21 |
|---|---|---|---|---|

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | Darrell Buck | | | |
| | | | | | |
| | | 20 bins @ | $34.85 | | |
| | | Less rent | $27.00 | | |
| | | | | | $697.00 |
| | | | | | 27.00 |
| | | | | | $670.00 |

522556

## Invoice

| SOLD TO | West Wind & Assoc. | | SHIP TO | |
| ADDRESS | | | ADDRESS | |
| CITY, STATE, ZIP | | | CITY, STATE, ZIP | |

| CUSTOMER ORDER NO. | SOLD BY | TERMS | F.O.B. | DATE 11-19-21 |

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---------|---------|-------------|-------|------|--------|
| | | | | | |
| | | | | | |
| | | | | | |
| | | Darrell Buck | | | |
| | | 20 bins @ | $34.85 | | |
| | | Less rent | $27.00 | | |
| | | | | | $697.00 |
| | | | | | 27.00 |
| | | | | | $670.00 |

Buck000047

522557

**Invoice**

| SOLD TO | West Wind & Assoc. | | SHIP TO | |
| ADDRESS | | | ADDRESS | |
| CITY, STATE, ZIP | | | CITY, STATE, ZIP | |

| CUSTOMER ORDER NO. | SOLD BY | TERMS | F.O.B. | DATE 11-26-21 |

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---------|---------|-------------|-------|------|--------|
| | | | | | |
| | | Darrell Buck | | | |
| | | 6 bins @ | $ 49.16 | | |
| | | Less rent | $ 27.00 | | |
| | | | | | $ 295.00 |
| | | | | | 27.00 |
| | | | | | $ 268.00 |

Osborne 5040

09-15

Buck000048

522557

**Invoice**

SOLD TO *West Wind & Assoc.*

ADDRESS

CITY, STATE, ZIP

SHIP TO

ADDRESS

CITY, STATE, ZIP

| CUSTOMER ORDER NO. | SOLD BY | TERMS | F.O.B. | DATE 11-26-21 |
|---|---|---|---|---|

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| | | *Darrell Buck* | | | |
| | | *6 bins @* | $ 49.16 | | |
| | | *Less rent* | $ 27.00 | | |
| | | | | | $ 295.00 |
| | | | | | 27.00 |
| | | | | | $ 268.00 |

adams 5040                                                                          09-15

Buck000049

522558

**Invoice**

SOLD TO: West Wind & Assoc.
ADDRESS:
CITY, STATE, ZIP:

SHIP TO:
ADDRESS:
CITY, STATE, ZIP:

| CUSTOMER ORDER NO. | SOLD BY | TERMS | F.O.B. | DATE 12-3-21 |
|---|---|---|---|---|

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| | | Darrell Buck | | | |
| | | 13 bins @ | $ 53.60 | | |
| | | Less rent | $ 27.00 | | |
| | | | | | $ 697.00 |
| | | | | | 27.00 |
| | | | | | $ 670.00 |

09-16

**522559**

| Invoice | | | | | |
|---|---|---|---|---|---|
| SOLD TO West Wind & Assoc. | | | SHIP TO | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP | | | CITY, STATE, ZIP | | |

| CUSTOMER ORDER NO. | SOLD BY | | TERMS | F.O.B. | | DATE 12-10-21 |
|---|---|---|---|---|---|---|

| ORDERED | SHIPPED | DESCRIPTION | | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | Darrell Buck | | | | |
| | | 13 bins @ | | $ 53.61 | | |
| | | Less rent | | $ 27.00 | | |
| | | | | | | $ 697.00 |
| | | | | | | 27.00 |
| | | | | | | |
| | | | | | | $ 670.00 |

**522560**

## Invoice

| SOLD TO | West Wind & Assoc. | SHIP TO | |
|---|---|---|---|
| ADDRESS | | ADDRESS | |
| CITY, STATE, ZIP | | CITY, STATE, ZIP | |

| CUSTOMER ORDER NO. | SOLD BY | TERMS | F.O.B. | DATE 12-17-21 |
|---|---|---|---|---|

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | Darrell Buck | | | |
| | | 15 bins @ | $ 46.46 | | |
| | | Less rent | $ 27.00 | | |
| | | | | | |
| | | | | | $ 697.00 |
| | | | | | 27.00 |
| | | | | | $ 670.00 |

Adams 5840                                                      09-15

Buck000052

**522561**

**Invoice**

| SOLD TO | | SHIP TO | |
|---|---|---|---|
| West Wind & Assoc. | | | |
| ADDRESS | | ADDRESS | |
| CITY, STATE, ZIP | | CITY, STATE, ZIP | |

| CUSTOMER ORDER NO. | SOLD BY | TERMS | F.O.B. | DATE 12-31-21 |
|---|---|---|---|---|

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| | | Fabricated leg plates @ | $21.45 | | |
| | | Less rent | $27.00 | | |
| | | | | | $ 429.00 |
| | | | | | 27.00 |
| | | | | | 402.00 |
| | | | | | $ 402.00 |

Buck000053



300901

**Statement**

DATE 1-15-21

TERMS

TO West Wind & Assoc.

IN ACCOUNT WITH

Darrell Buck

6 bins @   $ 79.16
Less rent   $ 27.00

$ 475.00
     27.00

| CURRENT | OVER 30 DAYS | OVER 60 DAYS | TOTAL AMOUNT | $ 448.00 |
|---------|--------------|--------------|--------------|----------|

adams DC5012

01-11

Buck000054

7-B-1

Shamus Watson weekly record

| Week of | Time spent at WWA |
|---|---|
| 11-25-20 | 23 hours and 45 minutes |
| 12-4-20 | 37 hours and 30 minutes |
| 12-11-20 | 39 hours and 20 minutes |
| 12-18-20 | 34 hours |
| 12-23-20 | 23 hours and 40 minutes |
| 12-31-20 | 16 hours |
| 1-8-21 | 39 hours and 50 minutes |
| 1-15-21 | 39 hours and 15 minutes |
| 1-22-21 | 28 hours |
| 1-29-21 | 39 hours and 40 minutes |
| 2-5-21 | 20 hours |
| 2-12-21 | CoVid Pay |
| 2-19-21 | 10 hours |
| 2-26-21 | 34 hours |
| 3-5-21 | 39 hours and 40 minutes |
| 3-12-21 | 39 hours and 25 minutes |
| 3-19-21 | 28 hours and 15 minutes |
| 3-26-21 | 27 hours and 45 minutes |
| 4-2-21 | 38 hours |
| 4-9-21 | 39 Hours and 25 minutes |
| 4-16-21 | 38 Hours and 55 minutes |

West Wind 000184

7-B-2

Shamus Watson weekly record

| Week of | Time Spent at WWA |
|---|---|
| 4-23-21 | 29 hours and 40 minutes |
| 4-30-21 | 38 hours and 30 minutes |
| 5-7-21 | 39 hours and 40 minutes |
| 5-14-21 | 33 hours and 30 minutes |
| 5-21-21 | 38 Hours ad 30 minutes |
| 5-28-21 | 32 Hours and 45 minutes |
| 6-4-21 | 25 hours and 30 minutes |
| 6-18-21 | 21 hours and 35 minutes |
| 6-25-21 | 35 Hours and 55 minutes |
| 7-2-21 | 37 Hours and 40 minutes |
| 7-9-21 | 32 hours |
| 7-16-21 | 35 Hours and 55 minutes |
| 7-23-21 | 38 Hours and 55 minutes |
| 7-30-21 | 40 Hours |
| 8-6-21 | 30 Hours and 10 minutes |
| 8-13-21 | 29 Hours |
| 8-20-21 | 39 Hours and 35 minutes |
| 8-27-21 | 39 Hours |
| 9-2-21 | 39 Hours and 10 minutes |
| 9-10-21 | 30 hours and 30 minutes |
| 9-17-21 | 36 Hours |

7-B-3

Shamus Watson Weekly Record

| Week of | Time spent at WWA |
|---------|-------------------|
| 9-24-21 | 39 Hours and 10 minutes |
| 10-1-21 | 32 Hours and 50 minutes |
| 10-8-21 | 38 Hours and 30 minutes |
| 10-14-21 | 32 Hours and 50 minutes |
| 10-22-21 | 37 Hours and 30 minutes |
| 10-29-21 | 32 Hours and 30 minutes |
| 11-5-21 | 35 Hours and 30 minutes |
| 11-12-21 | 35 Hours and 40 minutes |
| 11-19-21 | 29 Hours |
| 11-24-21 | 23 Hours |
| 12-3-21 | 33 Hours and 30 minutes |
| 12-10-21 | 36 Hours |
| 12-17-21 | 30 Hours and 30 minutes |
| 12-23-21 | 17 Hours and 30 minutes |
| 12-31-21 | 20 Hours and 30 minutes |
| 1-7-22 | 33 hours and 15 minutes |
| 1-14-22 | 24 Hours and 15 minutes |
| 1-21-22 | 33 Hours and 50 minutes |
| 2-4-22 | 23 Hours and 30 minutes |
| 2-11-22 | 35 Hours and 30 minutes |
| 2-18-22 | 37 Hours and 30 minutes |
| 2-25-22 | 39 Hours and 35 minutes |

West Wind 000186

7-B-4

Shamus Watson Weekly Record

| Week of | Time spent at WWA |
|---------|-------------------|
| 3-4-22 | 34 Hours |
| 3-11-22 | 12 Hours and 15 minutes |
| 3-18-22 | 33 Hours and 10 minutes |
| 3-25-22 | 8 Hours |
| 4-1-22 | 36 Hours and 30 minutes |
| 4-8-22 | 36 Hours and 45 minutes |
| 4-15-22 | 38 Hours and 55 minutes |
| 4-22-22 | 32 Hours and 55 minutes |
| 4-29-22 | 39 Hours and 15 minutes |
| 5-6-22 | 19 Hours |
| 5-13-22 | 39 Hours and 25 Minutes |
| 5-20-22 | 30 Hours and 5 Minutes |
| 5-27-22 | 27 Hours and 45 minutes |
| 6-3-22 | 39 Hours and 25 Minutes |
| 6-10-22 | 16 Hours and 50 minutes |
| 6-17-22 | 38 Hours and 55 minutes |
| 6-24-22 | 27 Hours |
| 7-1-22 | 23 Hours and 19 minutes |
| 7-8-22 | 23 Hours 40 minutes |
| 7-15-22 | 39 Hours and 30 minutes |
| 7-22-22 | 7 Hours and 30 minutes |

West Wind 000187

7-C-1

**Darrell Buck weekly Record**

| Week of | Time Spent at WWA | |
|---|---|---|
| 1-15-21 | 32 Hours | |
| 1-22-21 | 39 Hours and 30 minutes | |
| 1-29-21 | 39 Hours and 20 minutes | |
| 2-4-21 | 23 Hours and 40 minutes | Closed on Friday for CoVid |
| 2-12-21 | Closed for CoVid | |
| 2-19-21 | Absent all week | |
| 2-26-21 | 39 Hours and 15 minutes | |
| 3-5-21 | 34 Hours | |
| 3-12-21 | 35 Hours and 30 minutes | |
| 3-19-21 | 38 Hours and 30 minutes | |
| 3-26-21 | 38 Hours and 30 minutes | |
| 4-2-21 | 29 Hours and 30 minutes | |
| 4-9-21 | 36 Hours | |
| 4-16-21 | 39 Hours | |
| 4-23-21 | 31 Hours | |
| 4-30-21 | 35 Hours | |
| 5-7-21 | 38 hours and 50 minute | |
| 5-14-21 | 37 Hours | |
| 5-21-21 | 38 Hours and 45 minutes | |
| 5-28-21 | 40 Hours | |
| 6-4-21 | 22 Hours | |

7-C-2

Darrell Buck Weekly Record

| Week of | Time spent at WWA |
|---------|-------------------|
| 6-11-21 | 39 Hours and 40 minutes |
| 6-18-21 | 38 hours and 40 minutes |
| 6-25-21 | 40 Hours |
| 7-2-21 | 24 Hours |
| 7-9-21 | 38 Hours and 30 minutes |
| 7-16-21 | 38 Hours and 40 minutes |
| 7-23-21 | 38 Hours and 10 minutes |
| 7-30-21 | 38 Hours and 15 minutes |
| 8-6-21 | 32 Hours and 40 minutes |
| 8-13-21 | 30 Hours and 50 minutes |
| 8-20-21 | 39 Hours and 30 minutes |
| 8-27-21 | 32 Hours and 50 minutes |
| 9-2-21 | 37 Hours and 55 minutes |
| 9-10-21 | 28 Hours |
| 9-17-21 | 38 Hours and 40 minutes |
| 9-24-21 | 37 Hours and 45 minutes |
| 10-1-21 | 39 Hours and 15 minutes |
| 10-8-21 | 39 Hours ad 50 minutes |
| 10-15-21 | 31 Hours and 45 minutes |
| 10-22-21 | 39 Hours and 10 minutes |
| 10-29-21 | 38 Hours and 50 minutes |
| 11-5-21 | 31 Hours and 40 minutes |

West Wind 000189

7-C-3

Darrell Buck Weekly Record

| Week of | Time spent at WWA |
|---|---|
| 11-12-21 | 39 Hours and 20 Minutes |
| 11-19-21 | 39 Hours |
| 11-24-21 | 16 Hours |
| 12-3-21 | 39 Hours and 35 minutes |
| 12-10-21 | 39 Hours and 35 minutes |
| 12-17-21 | 39 Hours and 45 minutes |
| 12-24-21 | 0 Hours IN JAIL |
| 12-31-21 | 18 Hours and 30 minutes |
| 1-7-22 | 39 Hours and 40 minutes |
| 1-14-22 | 38 Hours and 45 minutes |
| 1-21-22 | 32 Hours |
| 1-28-22 | 37 Hours and 30 minutes |
| 2-5-22 | 25 Hours and 45 minutes |
| 2-11-22 | 32 Hours |
| 2-17-22 | 28 Hours and 15 minutes |
| 2-25-22 | 31 Hours and 50 minutes |
| 3-4-22 | 36 Hours |
| 3-11-22 | 35 Hours |
| 3-18-22 | 40 Hours |
| 3-25-22 | 40 Hours |
| 4-1-22 | 36 Hours |

7-C-4

Darrell Buck Weekly Record

| Week of | Time Spent at WWA |
| --- | --- |
| 4-8-22 | 35 Hours |
| 4-15-22 | 37 Hours and 15 minutes |
| 4-22-22 | 35 Hours and 30 minutes |
| 4-27-22 | 14 Hours |
| 5-6-22 | 39 Hours and 38 minutes |
| 5-13-22 | 27 Hours and 20 minutes |
| 5-20-22 | 29 Hours and 30 minutes |
| 5-27-22 | 25 Hours |
| 6-3-22 | 32 Hours |
| 6-10-22 | 39 Hours |
| 6-17-22 | 36 Hours and 30 Minutes |
| 6-24-22 | 31 Hours and 30 minutes |
| 7-1-22 | 32 Hours |
| 7-8-22 | 31 Hours and 45 minutes |
| 7-15-22 | 40 Hours |
| 7-21-22 | 29 Hours and 30 minutes left on unscheduled leave |
| 7-29-22 | Absent all week |
| 8-4-22 | 37 Hours |
| 8-9-22 | 20 Hours and 45 minutes. |

8-B-1

Shamus Watson pay record

Shamus had problems with math so his itemizations, multiplications and deductions were often incorrect or reversed. I had to check his computations every week

| Week of | # of bins | Amount paid per bin |
|---------|-----------|---------------------|
| 11-25-20 | initially hired to paint shop wall for $327.00 - spent two days on that | |
| | Then wanted to weld bins | |
| | 1 | $30.00 |
| 12-4-20 | 15 | $35.00 |
| 12-11-20 | 14 | $42.86 |
| 12-18-20 | 13 | $39.76 |
| 12-23-20 | 12 | $43.33 |
| 12-31-20 | 10 | $39.60 |
| 1-8-21 | 10 | $66.00 |
| 1-15-21 | 15 | $42.67 |
| 1-22-21 | 10 | $51.50 |
| 1-29-21 | 19 | $33.26 |
| 2-5-21 | 4 | $65.75 |
| 2-12-21 | 10 | $81.00 |
| 2-19-21 | 2 | $95.00 |
| 2-26-21 | 5 | $108.00 |
| 3-5-21 | 11 | $61.36 |
| 3-12-21 | 6 | $25.00 |
| loading and unloading trucks | | $525.00/week  (wasn't cutting it as a welder so offered Shamus contract work unloading and loading trucks) |
| 3-19-21 | 8 | $67.50 |
| 3-26-21 | 10 | $54.70 |

West Wind 000193

8-B-2

Shamus Watson pay record

| Week of | # of bins | Amount paid per bin |
|---|---|---|
| 4-2-21 | 4 | $25.00 |
| loading and unloading trucks | | $575.00/week |
| 4-9-21 | 4 | $25.00 |
| loading and unloading trucks | | $575.00/week |
| 4-16-21 | 1 | $25.00 |
| loading and unloading trucks | | $650.00/week |
| 4-23-21 | 1 | $25.00 |
| loading and unloading trucks | | $650.00/week |
| 4-30-21 loading and unloading of trucks | | $547.00/week |
| 5-7-20 | 4 | $25.00 |
| loading and unloading of trucks. | | $575.00/week |
| 5-14-21 | 4 | $25.00 |
| Loading and unloading trucks | | $595.00/week |
| 5-21-21 | 4 | $25.00 |
| Loading and unloading trucks. | | $595.00/week |
| 5-28-21 | 4 | $25.00 |
| Loading and unloading trucks | | $595.00/week |
| 6-4-21 | 4 | $25.00 |
| Loading and unloading trucks | | $490.00/week |
| 6-11-21 Loading and unloading trucks | | $381.00/week |
| 6-18-21 loading and unloading of trucks | | $612.50/week |
| 6-25-21 loading and unloading of trucks | | $695.00/week |
| 7-2-21 loading and unloading of trucks | | $695.00/week |
| 7-11-21 loading and unloading of trucks | | $695.00/week |
| 7-23-21 loading and unloading of trucks | | $705.00/week |
| 7-30-21 loading and unloading of trucks | | $705.00/week |

8-B-3

Shamus Watson pay record

| Week of | # of bins washed | Amount paid per bin. |
|---|---|---|
| 8-6-21 | Loading and unloading of trucks | $564.00/week |
| 8-13-21 | 60 | $8.84 |
| 8-20-21 | 80 | $8.84 |
| 8-27-21 | Loading and unloading trucks | $705.00/week |
| 9-2-21 | Loading and unloading of trucks | $654.25/week |
| 9-10-21 | Loading and unloading of trucks | $530.00/week |
| 9-17-21 | Loading and unloading of trucks | $705.00/week |
| 9-24-21 | Loading and unloading of trucks | $705.00/week |
| 10-1-21 | Loading and unloading of trucks | $571.00/week |
| 10-8-21 | loading and unloading of trucks | $688.00/week |
| 10-22-21 | loading and unloading of trucks | $638.00/week |
| 10-29-21 | 25 | $17.72 |
| 11-5-21 | 60 | $10.90 |
| 11-12-21 | 60 | $9.40 |
| 11-19-21 | 60 | $7.22 |
| 11-24-21 | 40 | $10.58 |
| 12-3-21 | 40 | $14.30 |
| 12-10-21 | 40 | $15.98 |
| 12-17-21 | 35 | $14.92 |
| 12-23-21 | 35 | $13.00 |
| 12-31-21 | 30 | $11.22 |
| 1-7-22 | 30 | $19.73 |

West Wind 000195

8-B-4

Shamus Watson pay record

| Week of | # bins washed | Amount paid per bin |
|---|---|---|
| 1-14-22 | 20 | $21.90 |
| 1-21-22 | 20 | $32.70 |
| 2-4-22 | 40 | $10.58 |
| 2-11-22 | 20 | $31.90 |
| 2-18-22 | 35 | $19.17 |
| 2-25-22 | 40 | $17.88 |
| 3-4-22 | 40 | $15.33 |
| 3-11-22 | 20 | $17.20 |
| 3-18-22 | 50 | $12.60 |
| 3-25-22 | 12 | $11.75 |
| 4-1-22 | 40 | $17.10 |
| 4-8-22 | 125 | $5.10 |
| 4-15-22 | 135 | $5.30 |
| 4-22-22 | 125 | $4.97 |
| 4-29-22 | 125 | $5.72 |
| 5-6-22 | 40 | $12.66 |
| 5-13-22 | 125 | $5.72 |
| 5-20-22 | 90 | $7.56 |
| 5-27-22 | 110 | $4.65 |
| 6-3-22 | 120 | $4.77 |
| 6-10-22 | 45 | $6.89 |
| 6-17-22 | 100 | $7.15 |

West Wind 000196

8-B-5

Shamus Watson pay record

| Week of | # bins washed | Amount paid per bin |
|---------|---------------|---------------------|
| 6-24-22 | 40 | $12.43 |
| 7-1-22 | 40 | $11.75 |
| 7-9-22 | 45 | $9.40 |
| 7-15-22 | 124 | $5.77 |
| 7-22-22 | 14 | $9.57   Final |

West Wind 000197

8-C-1

Darrell Buck pay record          (not proficient in math-numerous division and multiplication errors)

| Week of | # bins | Amount paid per bin |
|---------|--------|---------------------|
| 1-15-21 | 13 | $36.62 |
| 1-22-21 | 6 | $98.00 |
| 1-29-21 | 12 | $52.90 |
| 2-4-21 | 6 | $84.67 |
| 2-12-21 | 10 | $74.80 |
| 2-19-21 | Not at work | |
| 2-26-21 | 6 | $104.67 |
| 3-5-21 | 8 | $78.38 |
| 3-12-21 | 9 | $69.67 |
| 3-19-21 | 10 | $66.70 |
| 3-26-21 | 12 | $55.58 |
| 4-2-21 | 10 | $53.90 |
| 4-9-21 | 10 | $66.70 |
| 4-16-21 | 13 | $51.31 |
| 4-23-21 | 12 | $44.92 |
| 4-30-21 | 10 | $60.30 |
| 5-7-21 | 13 | $51.31 |
| 5-14-21 | 15 | $42.33 |
| 5-21-21 | 13 | $42.69 |
| 5-28-21 | 22 | $34.35 |
| 6-4-21 | 15 | $34.80 |

West Wind 000198

8-C-2

Darrel Buck pay record

| Week of. | # of bins | Amount paid per bin |
|---|---|---|
| 6-11-21 | 20 | $34.35 |
| 6-18-21 | 20 | $34.35 |
| 6-25-21 | 12 | $57.25 |
| 7-2-21 | 2 | $211.50 |
| 7-9-21 | 10 | $55.50 |
| 7-16-21 | 12 | $57.25 |
| 7-23-21 | 10 | $67.05 |
| 7-30-21 | 16 | $43.56 |
| 8-6-21 | 11 | $52.70 |
| 8-13-21 | 12 | $44.82 |
| 8-20-21 | 13 | $53.62 |
| 8-27-21 | 10 | $56.30 |
| 9-2-21 | 13 | $53.62 |
| 9-10-21 | 13 | $38.15 |
| 9-17-21 | 20 | $34.85 |
| 9-24-21 | 20 | $34.85 |
| 10-1-21 | 20 | $34.85 |
| 10-8-21 | 22 | $31.68 |
| 10-15-21 | 15 | $37.53 |
| 10-22-21 | 20 | $34.85 |
| 10-29-21 | 5 | $139.40 |
| 11-5-21 | 10 | $56.30 |

8-C-3

Darrell Buck pay record

| Week of. | # of bins. | Amount paid per bin. | |
|---|---|---|---|
| 11-12-21 | 20 | $34.85 | |
| 11-19-21 | 20 | $34.85 | |
| 11-24-21 | 6 | $49.17 | |
| 12-3-21 | 13 | $53.62 | |
| 12-10-21 | 13 | $53.62 | |
| 12-17-21 | 15 | $46.47 | |

12-24-21 Not at work — In Jail

12-31-21   Injured from car accident so put on lighter contract work
Fabricated 20 leg plates at S21.45 each

| | | | |
|---|---|---|---|
| 1-7-22 | 15 | $44.67 | |
| 1-14-22 | 20 | $32.33 | |
| 1-21-22 | 18 | $38.72 | |
| 1-28-22 | 12 | $58.08 | |
| 2-5-22 | 15 | $28.60 | |
| 2-11-22 | 15 | $37.53 | |
| 2-17-22 | 10 | $53.70 | |
| 2-25-22 | 10 | $55.60 | |
| 3-4-22 | 12 | $55.37. | Asked for advance of $200 |
| 3-11-22 | 10 | $58.80 | $200 advance deducted from pay |
| 3-18-22 | 12 | $58.08 | |
| 3-25-22 | 15 | $46.47 | |
| 4-1-22 | 15 | S43.73 | |

8-C-4

Darell Buck pay record

| Week of | # of Bins | Amount paid per bin |
|---------|-----------|---------------------|
| 4-8-22  | 13        | $47.85              |
| 4-15-22 | 12        | $56.08              |
| 4-22-22 | 15        | $47.13              |
| 4-27-22 | 3         | $98.34              |
| 5-6-22  | 13        | $54.38              |
| 5-13-22 | 8         | $69.25              |
| 5-20-22 | 10        | $53.70              |
| 5-27-22 | 10        | $47.90              |
| 6-3-22  | 9         | $63.44              |
| 6-10-22 | 15        | $46.00              |
| 6-17-22 | 11        | $58.09              |
| 6-24-22 | 10        | $57.10              |
| 7-8-22  | 12        | $58.92              |
| 7-15-22 | 12        | $58.91              |
| 7-21-22 | 11        | $51.91              |
| 8-4-22  | 10        | $67.30              |
| 8-12-22 | 5         | $75.95              |

West Wind 000201