IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

**DARRELL BUCK and**　　　　　　　　　　　　　　　　　　　　　　**PLAINTIFFS**
**SHAMUS WATSON**

vs.　　　　　　　　Case No. 2:22-cv-2153-PKH

**WESTWIND AND ASSOCIATES, INC.**　　　　　　　　　　　　　**DEFENDANT**
**and MARK ECCLESTON**

## DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Defendants, Westwind and Associates, Inc., and Mark Eccleston for their Reply to Plaintiffs' Response to Motion for Summary Judgment state:

### I. INTRODUCTION

The Plaintiffs' Response (Doc. 29) is chock-full of self-serving, conclusory statements insufficient to create a dispute of material fact to defeat Defendants' Motion for Summary Judgment. The Plaintiffs' Response is bereft of competing affidavits or declarations supporting Plaintiffs contentions. Rather, the Plaintiffs rely solely on their own deposition testimony to defeat Defendants' Summary Judgment Motion. Plaintiffs self-serving testimony is not enough to defeat Defendants' Motion for Summary Judgment on all claims.

Unsupported, self-serving allegations and denials are insufficient to create genuine issues of material fact. *Anuforo v. Comm'r,* 614 F.3d 799, 807 (8th Cir. 2010). In addition, "a plaintiff's own self-serving, conclusory allegations in an affidavit or deposition. . . are insufficient to defeat summary judgment. *Marshall v. MWF Constr., LLC,* 2019 U.S. Dist. LEXIS 54038 *at 3 (E.D. Ark. Mar. 29, 2019); *Reynolds v. Stovall,* 2012 U.S. Dist. LEXIS 49963 *at 19 (W.D. Ark. Apr.

1

10, 2012) ("plaintiff's own self-serving statements. . . cannot serve as a basis for surviving summary judgment motion. More evidence is required"). The Plaintiffs "must substantiate [their] allegations with sufficient probative evidence that would permit a finding in [their] favor." *Smith v. Int'l Paper Co.,* 523 F.3d 845, 848 (8th Cir. 2008). The Plaintiffs have put forth no support for their allegations other than their own self-serving statements, therefore summary judgment should be granted in favor of the Defendants on all claims. "Evidence, not contentions, avoids summary judgment." *Al-Zubaidy v. Tek Industries, Inc.,* 406 F.3d 1030, 1036 (8th Cir. 2005).

## II. Economic Realities Show Plaintiffs are Independent Contractors

### i. **Plaintiffs controlled the nature of their work**

To support their argument the Defendants exercised significant control over the Plaintiffs, the Plaintiffs argue that Plaintiffs "were required to sign the [independent contractor] contract in order to perform services for the Defendants. (Doc. 29 p. 10). Plaintiffs would like it to appear they had no bargaining power in signing these independent contractor agreements. However, they did not have to accept their respective jobs, they could have worked elsewhere. Further, in their response to Defendants' Statement of Facts, Plaintiffs admit they were not subject to coercion or undue influence and they admit they executed the independent contractor agreements freely with Westwind. *See* Plaintiffs' Response to Statement of Undisputed Material Facts (Doc. 26 p. 6). Plaintiffs after the fact attempt to say they were bullied into signing these agreements which governed their relationship with Defendants is disingenuous.

In their Response, Plaintiffs position that Defendants exercised substantial control is easily rebutted when looking at the conflicting testimonies of Plaintiffs Darrell Buck and Shamus Watson. Contrary to Plaintiff Darrell Buck's assertions, the Defendants did not dictate the order in which plastic bins were to be repaired. Rather, Plaintiffs would just go to a repair bin pile and

grab one and take it back to their workstation. *See* (Doc. 23-5; Watson Dep. 53: 22-54: 13 (when asked if he was free to choose which bin out of the stack he would work on, Shamus Watson responded "Yeah.")). Noreen Eccleston confirms this in her supporting declaration, stating: "Independent contractors were free to select and choose which bins they would wash, weld or repair." *See (*Doc 23-1). Further, it is patently false and a mischaracterization of Darrell Buck's testimony that Defendants employed a supervisor who did *regularly* supervise plastic welders at work as Plaintiffs would have this Court believe. *See* Pltf. Resp. (Doc. 29, p. 11). Darrell Buck's actual testimony was "a supervisor would walk around and check in on us *periodically.*" *See* (Doc. 23-6 D. Buck Dep. 58: 1-4).

Plaintiffs next argument to show Defendants exhibited sufficient control over plaintiffs is attempting to characterize the independent contractor agreements as pseudo non-compete agreements. The independent contractor agreements *do not* limit or prevent the plaintiffs from working elsewhere. The only thing the independent contractor agreements prohibit is the usage of Defendants trade secrets in any other business venture. *See* (Docs. 23-3, 23-4). Plaintiffs were free to work elsewhere while providing their services to Defendants and could indeed have done so if they chose.

Lastly, it should be noted the Plaintiffs do not dispute the statements that Darrell Buck was late, absent, or left early a collective one hundred and eleven (111) times and Shamus Watson was late, absent or early a collective one hundred and forty-three (143) times. The plaintiffs exercised inordinate amounts of discretion in when they would leave and show up to work. If they were employees, they would have long since been terminated for such incessant flaunting of a work schedule. However, in this litigation, plaintiffs testified they were never punished for missing a workday. *See* S. Watson Dep. 63:20-25 (Doc. 23-5). Such behavior is

indicative of independent contractor status. *See O'Dell v. Qualscript, LLC*, 2023 U.S. Dist. LEXIS 53084 (E.D. Ark. Mar. 28, 2023) ("regularity with which plaintiff missed some or all of a shift without consequence cuts toward independent contractor status).

The Plaintiffs have failed to (and cannot) show the Defendants exerted sufficient control over the Plaintiffs. As evidenced in this case, the plaintiffs could come and go as they desired, could control how much or how little work they did, and were not subject to a quota or order of bin repair. It is evident Plaintiffs controlled their work in such a way to render plaintiffs independent contractors.

### ii. Plaintiffs invested in their business

Courts typically look at how parties treat themselves when determining whether one is an employee or independent contractor. Important weight is to be given to contractual terms that comprehensively set out an independent contractor relationship–especially where the subsequent tax-and-benefits related behavior of the parties conforms to those terms. *Id.*, at *28.

In this case, Plaintiffs were charged to rent and utilize the Defendants tools and shop to perform plastic bin repairs. Further, Plaintiff Darrell Buck filed a Schedule C in which he utilized and claimed business expense deductions on his taxes. *See* (Doc. 23-11). Mr. Buck deducted roughly a third of his income as business expenses in 2021. (Doc. 23-11). It is clear Darrell Buck sought to utilize every advantage of business expense deduction to avoid paying taxes. [1] These types of deductions are akin to investments in the plaintiffs' respective businesses and weigh in favor of independent contractor status. *See Karlson v. Action Process Serv. & Private Investigation, LLC*, 860 F.3d 1089, 1095 (8th Cir. 2017).

---

[1] Defendants did not discuss Plaintiff Shamus Watson's investments in their Motion because it appears he has not filed tax returns for all years relevant to this litigation. Plaintiffs concede as much in their Response to Defendants' Statement of Facts. *See* (Doc. 26 p. 8).

### iii. Plaintiffs controlled their opportunity for profit and loss

Plaintiffs were able to control their opportunity for profit and loss based on efficiency, quality, and productivity. *See* S. Watson Dep. 46: 22-27: 24 (Doc. 23-5). Put another way, the harder the plaintiffs worked, the greater compensation they would receive. The more bins welded, was a factor which led to the opportunity to earn more.

The Plaintiffs were not guaranteed a certain level of income each week which lends itself to a finding of independent contractor status. *See Roslov v. DirecTV Inc.,* 218 F. Supp. 3d 965, 977 (Ark. E.D. Nov. 4, 2016) (holding that plaintiff who was not guaranteed a certain level of income each week was in control of his ability for profit or loss). Review of the weekly invoices plaintiffs received clearly shows they were in control of how much the plaintiffs would earn in any given week. It boils down to the uncontroverted fact that if the plaintiffs were not working and repairing bins, they were not getting paid.

In their initial response, plaintiffs state the Defendants "did not provide a single invoice submitted by Plaintiffs during discovery." *See* (Doc. 29 p. 17). This is categorically false.[2] Plaintiffs would submit weekly invoices for payment. The plaintiffs *would not* report their hours worked on invoices. Further, the Defendants vehemently deny the plaintiffs would report their hours worked to Westwind at the end of each work week. The invoices do not reflect hours worked by the plaintiffs in any given workweek.

The plaintiffs ability to earn more money was directly correlated to their performance in the workplace, not the whims of Defendants as Plaintiffs would have this court believe. Indeed, plaintiffs' pay, when converted to an hourly typically varied from week to week. Plaintiffs were in control of their ability to increase their profits.

---

[2] Defendants produced invoices for each plaintiff with their Initial Disclosures in February 2023.

### iv. Plaintiffs work required skill

It is undisputed that the work plaintiffs performed is highly specialized, requiring a certain unique skillset. In their response, plaintiffs conflate initiative with building business with the skill required to perform plastic welding. This is presumably to side-step the inconvenient truth that plastic welding is a highly technical and highly skilled job. Further, plaintiffs independent contractor agreements did not require plaintiffs to attract their own customers; did not require plaintiffs to expand their plastic welding services outside of Westwind; and did not require plaintiffs to obtain new plastic welding customers. *See* (Doc. 23-3 and 23-4). Plastic welding requires its own specialized welding guns and is not something someone would be able to do without training. *See* S. Watson Dep. 31: 15-23 (Doc. 23-5). It is indisputable the skill required to do plastic welding repair cuts toward independent contractor status.

### v. Lack of Permanence

The evidence regarding plaintiffs' short work histories with Westwind militates toward a finding that plaintiffs were independent contractors. Further, any insinuation or notion that the parties thought the relationship was indefinite and ongoing is rooted in speculation and conjecture and is wholly unfounded. Federal courts in Arkansas have ruled "permanence is lacking" when there was no evidence a cable installer agreed to work for DirecTV for any set duration. *See Roslov,* 218 F.Supp. 3d at 977. Further, the relatively short time periods in which plaintiffs provided their services to Westwind (19 months and 20 months, respectively) lends itself toward independent contractor status.

### III. Darrell Buck cannot make out a Case of Retaliation

Anti-retaliation provisions of the FLSA and AMWA do not apply to individual plaintiff Darrell Buck since he is an independent contractor. Even assuming Mr. Buck was an employee,

6

his retaliation claims would nonetheless fail as a matter of law. Plaintiff Darrell Buck cannot establish his termination was due to threatening to contact OSHA or contacting OSHA. There was no causal connection between Westwind letting Darrell Buck go and his filing of a complaint with OSHA.

In their Response, the Plaintiffs tap dance around the irrefutable fact that Defendants had no knowledge of Plaintiff's alleged protected activity of filing an OSHA complaint prior to letting Darrell Buck go. *See* (Doc. 23-13) ("the available evidence indicates that [Westwind] had no knowledge of [Buck's protected activity the time the decision was made to terminate Buck."). (emphasis added). Plaintiffs have not put forth a shred of evidence that plaintiff Darrell Buck was let go due to his allegation of contacting OSHA. Unsurprisingly, OSHA found that Westwind had not retaliated against Buck. Any self-serving statements relied upon by Buck for his retaliation claim are not enough to defeat summary judgment on Buck's retaliation claim, warranting summary judgment. Buck's own self-serving statements cannot serve as a basis for surviving summary judgment motion. *See Reynolds,* 2012 U.S. Dist. LEXIS 49963 *at 19.

### IV. Mark Eccleston is not individually liable and is not Plaintiff's Employer

Individual defendant, Mark Eccleston cannot be held liable under the FLSA and AMWA act due to the fact he was not the plaintiffs employer. Individual liability "as an employer under the FLSA is determined through actual involvement in the day-to-day activities." *Maurer v. Chico's FAS Inc.,* 2013 U.S. Dist. LEXIS 172121 (E.D. Mo. Dec. 6, 2013). Mere allegations are not enough to deem someone an employer under the FLSA.

It is abundantly clear that Mark Eccleston had, at best, minimum involvement in the operations of Westwind. He did not personally supervise either plaintiff; did not handle the day to day operations of Westwind; and did not handle the pay practices or financial affairs of

Westwind. *See* (Doc. 23-2). Indeed, Mark Eccleston has not been involved in the day-to-day operations of Westwind for the last three years, instead turning those duties over to Noreen Eccleston. *See* Doc. 23-1 and 23-2). Mark Eccleston did not execute the independent contractor agreements on behalf of Westwind with the plaintiffs and did not sign the checks which Westwind cut to the plaintiffs. It is undisputed that Mark Eccleston was not engaged in the "active management" of Westwind and was not behind the policies affecting plaintiffs contract labor services to Westwind. Further, self-serving statements from Shamus Watson where he states Mr. Eccleston asked him to work on weekends is unfounded and false. Plaintiffs themselves admit the shop was open from 6:00 A.M. to 2:30 P.M. Monday-Friday. *See* (Doc. 26 p. 3.) Other individuals who worked with Shamus Watson and Darrel Buck confirm the hours of operation for Westwind as 6:00 A.M.- 2:30 P.M. Monday- Friday. *See* T. Thomas Decl. ¶ 2 (Doc. 23-10).

In trying to impose individual liability on Mark Eccleston, the plaintiffs repeatedly make bald assertions unsupported by the evidence. For example, in their response they state, "Mr. Eccleston determined the rate and method of Plaintiffs' payment. And that "it was Mr. Eccleston who decided to pay plaintiffs an hourly rate. . . and who decided to misclassify plaintiffs as independent contractors." Plaintiffs also state Mr. Eccleston maintained the employment records, accepted time sheets and was instrumental in checking plaintiffs checks. Yet, plaintiffs produce absolutely no proof that any of the above occurred or was the case, because simply put, it was not. Plaintiffs did not bother to take Mr. Eccleston's deposition and have produced no supporting evidence for their assertions individual liability should attach to Mr. Eccleston. Plaintiffs must fight proof with proof and they have not done so here to survive summary judgment.

Accordingly, summary judgment should be granted and Mr. Eccleston should be dismissed from this lawsuit.

### V. Plaintiffs are not entitled to Unpaid Wages or Overtime Compensation

The plaintiffs in this case take the position they are owed unpaid overtime and minimum wages under the FLSA. However, as a threshold matter, plaintiffs cannot recover unpaid overtime and minimum wages because they are independent contractors. Even if they were deemed employees, the record and evidence clearly show their claims for overtime pay and minimum wage are rooted in conjecture and cannot be sustained. It is the plaintiffs' burden in this case to prove they performed work that was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946); *Bell v. Westside Dialysis Unit, LLC*, 2023 U.S. Dist. LEXIS 11413 *at 8 (E.D. Ark. Jan. 23 2023) ("burden of proof is on plaintiff to prove she performed work for which she was not paid"). Courts in the Western District of Arkansas have also stated: "employee[s] who sue for unpaid overtime has the burden of proving he performed work for which he was not properly compensated." *Travis v. Banks*, 2022 U.S. Dist. LEXIS 80186 (W.D. Ark. May 3, 2022).

The plaintiffs wholly rely on their own self-serving statements and vague testimony in support of their claims for overtime and unpaid wages. The plaintiffs must do this because they do not have any evidence or documentation showing the amount of hours they worked. The plaintiffs vague testimony will not suffice. To overcome the lack of evidence, the plaintiffs seek to have this court use the "just and reasonable inference" standard announced in *Anderson*. This "relaxed standard" in *Anderson* is inappropriate to the case at bar. Eighth circuit precedent is clear the "relaxed standard" in *Anderson* is not used for proving liability. Rather, *Anderson* related the standard of proof needed to prove the amount of damages. *See Carmody v. Kan. City*

*Bd. Of Police Comm'rs,* 713 F.3d 401, 407 (8th Cir. 2013) ("without record evidence of a single hour worked over forty hours that did not receive overtime wages or flextime, the officers' unsupported estimations of the unpaid hours due are not enough"). Simply put, the relaxed standard in *Anderson* "only applies where the existence of damages is *certain.*" *Id.,* at 406. The plaintiffs did not suffer any damages in this case.

In the case at bar the Defendants produced weekly invoices for the plaintiffs and also produced weekly hours worked reports in discovery which traced hours spent at work from calendars maintained in Defendants facility which were also produced to plaintiffs. The plaintiffs do not dispute either the calendars, or the weekly time reports offered in discovery. Rather, the plaintiffs just offer bare, conclusory and contradictory factual assertions. *See Thompson v. Dimichele Enters.* 2020 U.S. Dist. LEXIS 47656 *at 14 (E.D. Ark. Jan 3, 2020) (holding plaintiff failed to present sufficient evidence of damages).

The absurdity of plaintiffs damages claims are shown by a review of the actual evidence presented in this litigation. The plaintiffs claimed they worked approximately two to three hours of overtime a week (Buck) and four to five hours a week (Watson). *See* D. Buck. Dep. 76: 18-23 (Doc. 23-6); S. Watson Dep. 97:17-21 (Doc. 23-5). Even a cursory review of the plaintiffs hours worked and attendance records rebut any contention they would have worked over forty hours a week, much less working even forty hours per week. As noted in Defendants Motion for Summary Judgment and supporting documents, Westwind would maintain a calendar system where it would be noted if a worker was absent, tardy or left early. *See* C. Sanders Decl (Doc. 23-9). After review of the Weekly Hours Reports it is evident plaintiffs did not work overtime. For example, from the time Mr. Buck began providing contract labor to the time he stopped, Buck only worked forty (40) hours in five weeks (6.02%). Mr. Buck logged 30-39 hours in

69.8% of weeks worked; 20-29 hours in 14.5% of weeks worked; 10-19 hours in 3.6% of weeks worked; and 0-9 hours in 3.6% of weeks worked. These percentages were calculated dividing the particular number of weeks for any given hour threshold by the total number of weeks for Mr. Buck, which was eighty-three weeks. Mr. Buck never worked overtime and is not entitled to overtime pay.

Plaintiff Shamus Watson's self-serving testimony on alleged overtime hours worked is also unavailing. When looking at Mr. Watson's Weekly Hours Reports, we see that he logged forty hours worked in exactly *one week* during his eighty-six (86) weeks spent providing contract labor to Westwind. This equates to a whopping 1.2% of weeks in which he worked forty hours. Mr. Watson logged 30-39 hours in 66.3% of weeks worked; 20-29 hours in 21.7% of weeks worked; 10-19 hours in 7.2% of weeks worked and 0-9 hours in 1.2% of weeks worked. Further, Mr. Watson was known around Westwind's facility as "Monday" due to his propensity to miss work on Monday. *See* (D. Thatcher Decl.) (Doc. 23-7). Shamus Watson never worked overtime at Westwind and is not entitled to overtime pay. It is disingenuous and borderline frivolous for the plaintiffs to assert they are entitled to any overtime pay when: (i) they do not dispute the inordinate amount of time missed from work and (ii) do not produce any records of their own purporting to show how many hours they worked in any given workweek.

The Plaintiffs claims for unpaid time for donning and doffing are also without muster and are not supported by the evidence in this case. Plaintiffs make a mountain out of a mole hill regarding the changing of clothes and sanitation process. Tellingly, instead of deposing other workers of Westwind or submitting dueling counter affidavits or declarations to support plaintiffs contentions of time spent doffing and donning, the plaintiffs once again solely rely on their own self-serving testimony which is rebutted by evidence and testimony marshalled by the

Defendants. Plaintiffs' peers who worked during the same periods at issue in this litigation stated "it would take two to three minutes to change *and* sanitize. *See* C. Sanders Decl (Doc. 23-9). This is a far cry from the amount of time plaintiffs said it took to change.

The Plaintiffs attempt to paint a picture that they would diligently and promptly arrive at the facility and have to wait on space to become available to change and get ready for the workday. While this could have in theory been an issue, the reality is that the plaintiffs did not arrive at 5:30 A.M. as they allege. Donny Thatcher, who was typically the first worker to arrive at the shop around 5:45 A.M. stated in his declaration: "I do not recall Darrell Buck or Shamus Watson ever waiting on me to open the gate to get to Westwind's shop. I never recall Shamus Watson or Darrell Buck ever waiting outside of Westwind's shop with me prior to Mark or Noreen opening the shop door to begin the workday." *See* (D. Thatcher Decl.) (Doc. 23-7). *See also* C. Sanders Decl. ("both Shamus Watson and Darrell Buck frequently would not arrive until right at 6:00 A.M. or later on any given workday. I do not recall Darrell Buck or Shamus Watson arriving at the shop at 5:30 A.M. or 5:45 A.M.) (Doc. 23-9). Westwind workers would even document when plaintiffs and other workers were absent, showed up late or were tardy on a physical calendar. *See* (C. Sanders Decl.). (Doc. 23-9). These declarations from peers and co-workers of the plaintiffs refutes any self-serving and false statements that the plaintiffs had to wait around and spent time changing that went uncompensated. The plaintiffs were habitually late, absent and tardy as outlined above.

The plaintiffs claims for overtime and for unpaid compensation are based entirely on self-serving statements and bare assertions. The plaintiffs cannot reference specific days in which they claim overtime and instead just pull numbers out of the air. When reviewing the excessive amounts of time the plaintiffs missed from work, the plaintiffs arguments for unpaid overtime

and unpaid compensation crumble. Summary judgment is appropriate when a plaintiff cannot introduce sufficient evidence of the amount and extent of a plaintiff's work for any particular week. *Holaway v. Stratasys, Inc.,* 771 F.3d 1057, (8th Cir. 2014).

The case *Bell v. Westside Dialysis Unit, LLC,* 2023 U.S. Dist. LEXIS 11413 (E.D. Ark. Jan 23, 2023) is particularly instructive to the case at bar. In *Bell,* an employee filed suit claiming she was not paid for all hours worked. *Id.,* at *1. To support its position the plaintiff was correctly paid, the defendant submitted pay stubs showing weekly hours for which the plaintiff was paid. *Id.,* at *7. The *Bell* court stated the plaintiff "must provide a meaningful and consistent explanation for his estimate of hours worked that includes details which would allow a jury to determine he worked the claimed overtime." *Id.* In support of her position she was incorrectly paid, the plaintiff in *Bell* relied on her own testimony which the court found was general and vague and the Court noted the plaintiff could not recall specific dates or times. *Id.* The plaintiff in *Bell* contended "her co-workers could corroborate her claims, but had provided no affidavits or deposition testimony from these witnesses." *Id.,* at *9. The Court in *Bell* deemed these omissions fatal stating, "the failure prevents the potential testimony from creating genuine issues of material fact as to whether Plaintiff worked over forty hours in any work week." *Id.* The *Bell* court eventually granted summary judgment in favor of the Defendant due to plaintiff's failure to meet proof with proof and to the fact plaintiff had failed to provide evidence from which a jury could reasonably conclude [plaintiff] worked over forty hours a week and reasonably determine the amount of overtime hours worked. *Id.*

The plaintiffs in this case are similar to the plaintiff in *Bell.* Here, the plaintiffs rely solely on their own testimony and they cannot recall specific dates, weeks or times they allegedly worked over 40 hours. The plaintiffs in this case could have taken depositions of co-workers or

other plastic welders, yet did not do so. This failure is fatal and does not create a genuine issue of material fact. The plaintiffs cannot show they are entitled to overtime and cannot show they worked uncompensated hours. As done in *Bell*, this Court should grant summary judgment on plaintiffs claims for overtime and unpaid wages for the reasons set forth above.

### VI. Rebuttable Presumption

The Plaintiffs largely ignore the "rebuttable presumption" that the independent contractor agreements should be construed like any other contract. *See* (Doc. 24 Sec. III, B). Instead, the plaintiffs argue the independent contractor agreement was a sham. This is simply not the case. Both plaintiffs admitted to signing the agreements; and admitted they were not subject to coercion or undue influence and executed their independent contractor agreements freely with Westwind. *See* (Doc. 26 ¶10).

Plaintiff Darrell Buck also admits to claiming business expenses he would not otherwise been able to claim if he was an actual employee. *See* (Doc. 26 ¶14). Such tax-and-benefits related contractual provisions and behavior are "especially indicative of an independent contractor relationship. *O'Dell* 2023 U.S. Dist. LEXIS 53084 *at 27. The independent contractor agreements were executed by anyone who sought to perform plastic welding at Westwind during the relevant time period. There is no evidence of a sham. The plaintiffs knew they would be classified as independent contactors with Westwind. They voluntarily entered into and signed their respective independent contractor agreements. The rebuttable presumption, adhering to the parties contractual agreement should apply in this case and this Court should grant the Defendants motion for summary judgment.

WHEREFORE, premises considered, Defendants respectfully request this Court grant Defendants Motion for Summary Judgment, that Plaintiffs' Complaint be dismissed with prejudice and that the Court award any and all other relief to which it finds the Defendants so entitled.

Respectfully Submitted,

**WESTWIND & ASSOCIATES, INC & MARK ECCLESTON**

By: *[signature]*
Christopher J. Hooks, ABA #2020190
ROBERTSON, BEASLEY, SHIPLEY & ROBINSON, PLLC
315 North 7TH Street
Fort Smith, AR 72901
Phone: (479) 782-8813
Fax: (479) 785-0254

**ATTORNEY FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on the 31st day of August 2023, a true and correct copy of the above and foregoing was sent via email to the following attorney of record:

Josh Sanford
Daniel Ford
SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, AR 72211
daniel@sanfordlawfirm.com
josh@sanfordlawfirm.com

By: *[signature]*
Christopher J. Hooks